VARICK *against* THE MAYOR, ALDERMEN, and COMMON-ALTY of the CITY OF NEW-YORK.

Where the plaintiff, and those under whom he claims, have been in the quiet and uninterrupted possession of a lot of land, for *twenty-five years*, and upwards, the *Corporation of the City of New-York* cannot, under pretence that the buildings or fence on such lot, stand or encroach on a part of the public street or highway, enter upon, or disturb the plaintiff in the enjoyment thereof; and an *injunction* issued to restrain the *Corporation* from entering upon, digging, throwing down, or destroying, the ground so possessed by the plaintiff, was continued, and made perpetual, or until the *Corporation* should have established, by due course of law, their right to the ground in question.

Such an injunction, however, does not interfere with any right which the defendants may have to dig down the public street, close to the line possessed by the plaintiff, though such digging may, by necessary consequence, cause the soil of the plaintiff to fall into the excavated street.

THE bill stated a regular seisin and possession, by the plaintiff, and those under whom he claimed, to the premises described, and situated in the *eighth* ward of the city of *New-York*, and that the same had been *inclosed and improved by him and them, with buildings, &c. for upwards of twenty-five years last past.* That among other improvements, a stable, and board fence, and green-house, had, for that length of time, been erected on the northerly side of the premises, and adjoining to *St. David-street.* That the

*June 19th.*

1819.

VARICK
v.
CORPORATION
OF N. YORK.

part of *St. David-street* opposite the premises had never been conveyed to the defendants, but the soil and freehold were in the original owner, and his heirs and assigns. That the defendants had recently commenced digging out that part of *St. David-street*, opposite the northerly end of the premises, and have extended the digging into the plaintiff's premises, and threaten to continue it, for ten feet, into the ground of the plaintiff, which will destroy the stable and green house, and fence, and land marks, &c. Prayer for a perpetual injunction, and an account of the damages sustained.

The corporation, by their answer, insisted that *St. David-street* belonged to the people of the state, or to the corporation, and admitted the possession of the plaintiff, for some years past, and that his buildings and fences, on the north-east end of his block of land, were, as they allege, on the street, from two feet eight inches, to ten feet six inches. They denied that any possession will give the plaintiff a right against the people, or the defendants having a right to regulate and use the streets. The defendants did not allege any express cession of the street to them, but insisted that certain acts of the former proprietors, in laying out the streets, amounted to a cession of them, in law, to the people, and through them, to the corporation. The defendants denied that they had dug within the inclosure of the plaintiff, but avowed their intention to pursue the regulation of an ordinance of *July*, 1807, in respect to *Bleecker* (formerly *St. David*) street, and to dig out the street opposite the inclosure of the plaintiff; and that they believed it would subvert the stable, green-house, and fence of the plaintiff. They insisted that the plaintiff had encroached on *St. David-street*, as originally laid out.

*June* 19*th.*

The cause was brought to a hearing on the pleadings and proofs.

*T. A. Emmet, Wells,* and *Riggs,* for the plaintiff.

*O. Edwards,* and *P. A. Jay,* for the defendants.

THE CHANCELLOR. It appears to be admitted as a fact, that the plaintiff, and those under whom he claims, have had uninterrupted possession of the premises, claiming them as their own, up to the extent of their possession north, for upwards of 25 years, before the filing of the bill; and that the stable, fence, &c., were, during all that period of time, standing on the line on *St. David-street,* to which he claims. After such a length of time, it is right and just that the plaintiff should be protected in the enjoyment of his property, and that he should not be disturbed by any act or entry of the corporation of the city, under the pretence or allegation that the fence and buildings stand or encroach on part of the public highway. The defendants must first acquire possession of the ground in dispute, not by forcible entry, but by the regular process of law, before they can be permitted to use it as a street. The injunction which was granted upon the filing of the bill, went no further than to restrain the defendants from entering upon, and digging, and throwing down, and destroying, the land *so possessed by the plaintiff.* The injunction was not intended to interfere with the defendants in digging down the street close up to the line possessed by the plaintiff, though such digging might, by necessary consequence, cause the soil of the plaintiff, consisting of sand and gravel, to fall in upon the excavated street.(a) Whatever might be the rights of the parties,

(a) In *Panton* v. *Holland,* (17 *Johns. Rep.* 92.) the Supreme Court decided that a person about to erect a house contiguous to another, may lawfully sink the foundation of it below that of his neighbour's house, and is not liable for the damage which his neighbour may sustain, in consequence of it, provided it was unintentional, and he had used reasonable care and diligence in digging on his own ground, to prevent any injury to his neighbour. In *Thurston* v. *Hancock,*

growing out of such a fact, it was not the purpose of the injunction to interfere with such a case. The principle upon which the injunction, so modified, is to be upheld, is, that after a claim of right, accompanied with actual and constant possession, for twenty-five years, and upwards, the corporation of *New-York* cannot be permitted, without due process of law, to enter upon the possession of the plaintiff, and pull down buildings, fences, &c. under their right to regulate highways.

The injunction must be continued and made perpetual, or until the defendants have established, at law, their right to the ground in question.

Order accordingly.

(12 *Tyng's Rep.* 220.) where the plaintiff had built a house on his own ground, within two feet of the line, and ten years after, the owner of the adjoining land dug so deep into his own land as to endanger the house of the plaintiff, who was obliged to pull it down, the Supreme Court of Massachusetts held, that the plaintiff could not maintain an action for the damage to his house; and that a person who builds a house adjoining his neighbour's land, ought to foresee the probable use by his neighbour of his own land, and take care in building his house, to guard against any consequence which might arise. But, on the authority of *Rolle,* (2 *Abridgment,* 565, (I.) they held that the defendant was answerable for the direct consequential damage arising to the plaintiff from the falling of his natural soil, into the pit dug by the defendant. (1 *Sid.* 167. 1 *Comyn's Dig.* 315. *Action upon the case, and for a nuisance,* (C). But if no action will lie where the house of the plaintiff falls down, in consequence of the defendant digging in his own ground, on what principle can the plaintiff maintain an action, because some of his soil has fallen into the pit dug by his neighbour? Must there not be, in either case, malice, negligence, or misconduct on the part of the defendant, in order to sustain an action? If the defendant exercise his lawful right, without any fault on his part, the damage which the plaintiff may sustain, in consequence, is not justly imputable to the defendant, but is to be considered a mere casualty, or *damnum absque injuria.*