# Wheeling.

## CITY OF WHEELING v. CAMPBELL et al.

Decided November 17, 1877.

1877.
Special Term.
1. Where it appears from a plat, and other evidence, that a street in a city, has for more than forty years been used and occupied as a public street, and the deeds of property holders thereon, in their descriptions of their property, call for the street by name, and the plat shows that it was sixty-six feet wide at every point, except where a property holder has a building, where it is twenty-one inches less than sixty-six feet wide, and the house on the street twenty-one inches, was built several years after the plat was made, it will be presumed the street was dedicated to public use, and that it was of the width of sixty-six feet at the place where the house was so built.

2. The maxim *nullum tempus occurrit regi*, applies to sovereignty alone.

3. The statute of limitations, in the absence of an express provision to the contrary, runs against a municipal corporation, the same as against a natural person.

Appeal from an order of the circuit court of Ohio county, made on the 9th day of November 1875, dissolving an injunction entered theretofore in a cause in chancery wherein the city of Wheeling was plaintiff, and William Campbell and others were defendants.

The Hon. T. Melvin, judge of the first judicial circuit, entered the order complained of.

*George W. Jeffers*, for appellant, referred the Court to the following authorities:

Dillon on Mun. Corp., see 252, 518, 520, 521; *O'Connor* v. *Pitts.*, 18 Pa. 189; *People* v. *Carpenter*, 2 Doug. (Mich.) 273; Wood on Nuisances, see 252; 28 N. Y. 398; 23 Vt. 92; 28 Vt. 448; 36 Barb. 303; 1 How. Pl. Cr. 408; Wood on Nuisance, 243, 812, 840; *Cross* v. *Mayor, &c.*, 18 N. J. Eq. 311; *Drygest* v. *Schenck*, 23 Wend. 448; *Jersey City* v. *State*, 1 Vroom 527; *Simmons* v. *Connell*, 1 Rhd. 519; 58 Pa. 263; 16 S. & R. 390; 2 Watts. 23; 9 Casey 202; 3 Barr 202; 3 Phil. 368; 4 Martin (La.) 1; 1 Whart. 469; 3 Pa. (Pen and Watts.) 253; 1 Beal (N. J.) 547; 2 Gray 161; 4 Cush. 276; 52 Pa. 400.

*J. E. McKennan* and *L. S. Jordan*, for appellee.

The following statement of the case was furnished by JOHNSON, JUDGE:

On the 11th day of September 1875 the city of Wheeling presented to the judge of the circuit court of Ohio county its bill in chancery, alleging, by acts of the General Assembly of Virginia, the incorporation of the town of Wheeling, &c., and the act of the said General Assembly, incorporating the city of Wheeling in 1836, and the act of January 29, 1824, authorizing the county court of Ohio county to appoint five commissioners, any three of whom might act, whose duty it should be, "to ascertain by actual survey the true divisions, metes and bounds of all such streets, walks, alleys and lots, in the said town of Wheeling, as by an order of the mayor and commonalty they shall be directed to survey and mark, and shall make, or cause to be made a correct plat of said survey so made, and the same shall sign with their own proper hands and seals, and lodge in the clerk's office of the county court of Ohio county, there to be recorded; which return and survey, so duly made and recorded, shall in all future litigations concerning such boundaries, streets, walks, alleys and lots, be deemed, held and taken, as full evidence and

1877.
Special Term.

City of Wheeling
v.
Campbell *et al.*

conclusive between the parties, from and after the 1st day of April 1835; "that the county court did make such order, and appointed five commissioners to make such survey; and that the mayor and commonalty of the town of Wheeling also made the order required by said act, both of which orders are exhibited with the bill; and that four of said commissioners did in every respect, as required by said act, make such survey and plat, and that such plat was recorded; that by the several sections of the act incorporating the city of Wheeling it was provided, that "all the real and personal estate, and all the funds, rights, titles, taxes, credits, and claims, and rights of action of the mayor and commonalty of the town of Wheeling, and of the several additions to said town, enclosed within the bounds aforesaid, or which are held in trust, or have been appropriated for the use or benefit of the said mayor and commonalty, or the inhabitants of said town, or of any of the said additions, shall be and the same are hereby transferred to, and vested in the said city of Wheeling;" that in that portion of the said town of Wheeling now known as the Second ward of the city of Wheeling, there was a street laid out by the proprietors of the land, extending from the Ohio river eastwardly crossing Main, Market, Fourth and Fifth streets, to or near the top of the hill; said street was called Madison street, and by the said act of the proprietors of the land, was dedicated to the public use, and has been used as a public street, by the inhabitants of said town and city of Wheeling, from the time of its dedication; that by the survey made by said commissioners the said Madison street, now Tenth street, was ascertained to be sixty-six feet wide from the river to the top of the hill; that the said city is the owner of the land within the boundaries of the said street; that by the 45th section of the charter of the city of Wheeling, "the council shall have authority within said city to lay out and cause to be opened any streets, walks, alleys, market grounds and public squares, or to extend or widen the same, first having obtained the title to the

1877.
Special Term.

City of Wheel-
ing
v.
Campbell et al.

ground necessary for that purpose, and to graduate any street, walk, alley, market ground or public square, which is or shall be established within said city, to pave or otherwise improve the same, to cause them to be kept open and in good repair, and generally to ordain and enforce such regulations respecting the same, or any of them, as shall be proper for the health, interests, or convenience of the inhabitants of said city."

The bill charges, that one William S. Campbell trustee for Theodosia McGinnis, and said Theodosia McGinnis, claim the right to erect a wall upon and extending into the south side of said Madison (now Tenth) street, at or near the intersection of said street with Market street, a distance over the true line of about twenty-one inches, and extending along, and on the said street, over the line about twenty-one inches for forty feet, and so claiming have contracted with John A. Armstrong, Alexander Coen and J. B. Armstong, partners as Armstrong, Coen & Co., for the erection of a building or wall for a building, forty feet long, and on Madison, (now Tenth) street, and upon and over the south line thereof twenty-one inches for their own private use ; that said parties or some other persons unknown to plaintiff, employed by defendants, have commenced digging, and have dug into the said street and have laid a foundation wall for the said building, which wall extends over the true south line of said Madison ( now Tenth ) street twenty-one inches for forty feet along said street, against the consent and protest of the city of Wheeling ; that said erection will cause an obstruction in said street and will prevent the inhabitants of said city from using that portion of said street occupied by said wall, or building, and will constitute a public nuisance, and will cause a very great loss and injury to the said city of Wheeling and its inhabitants, and will defeat the purpose of the the proprietors, who dedicated the said land to the inhabitants of said town of Wheeling for a street ; and that the injury so done will be irreparable. The prayer of the

1877.
Special Term.

City of Wheel-
ing
v.
Campbell et al.

bill is, that said parties named as causing said obstruction be enjoined and restrained from erecting, or causing to be erected, the wall or building before mentioned, on or upon said Madison (now Tenth) street, until the further order of the court; and that upon the final hearing of the cause the injunction be made perpetual; and for general relief.    The bill is duly sworn to.

The injunction was by the judge of said court granted on said 11th September 1875 as prayed for; and process duly issued with the injunction endorsed thereon was served on all the defendants.

The following is the plat referred to in the report of commissioners who made the survey, and which was recorded on the 20th September 1870:

1877.
Special Term.

City of Wheeling
v.
Campbell *et al.*

The defendants, William S. Campbell, and Theodosia McGinnis, at November rules 1875 filed their answer to the bill; the substance of which is as follows: they admit that commissioners were appointed by the county court, as alleged in the bill, and that they made the survey and plat, as in said bill set forth, and that said plat is recorded in the office of the clerk of the county court; but they aver that said plat was not recorded in said clerk's office until 1870, and that it is of no legal force or effect, as evidence of the boundaries, of the streets within the city of Wheeling, because it was not recorded in said office before the year 1835; and they deny that the paper filed by the complainant as "Exhibit 3" is a true copy of any part of said plat; they admit that in the Second ward of said city" there is a street formely called Madison street, and now called Tenth street, extending from the Ohio river eastwardly, crossing Main and Market streets, which has been for a long time used as a public street by the inhabitants of the town and city of Wheeling, but they do not know whether the ground, over which said street passes, was ever dedicated by the owners to the town or city of Wheeling, and they do not admit that it was so dedicated, but ask that the complainant be required to prove such dedication; but they allege that no part of the ground, upon which they are building, as hereinafter stated, was ever so dedicated, or was ever used by the inhabitants of said town or city as a public street; these defendants deny that said street was ascertained by said commissioners to be sixty-sixty feet in width, and they allege that the width of said street was never legally ascertained and established;" they admit they contracted with the parties named in the bill for the erection of a house on Tenth street, and that the said contractors had built the foundation wall for said building; but they deny that said foundation wall extends over the true south line of said Tenth street twenty-one inches; they say they own in fee the lot of ground on Tenth street on which said wall is built, and that said lot

1877.
Special Term.

City of Wheeling
v.
Campbell *et al.*

has a front on Market street of twenty-nine feet, and extends along Tenth street seventy-two feet. Then follows a number of conveyances: the first from John McLure and wife on the 4th day of November 1847, of said lot to Christian Kammer and William Guelfas. On the 13th of September 1849 Guelfas and wife conveyed their undivided half to said Kammer; on the 14th January 1852 said Kammer conveyed said lot to C. Elias Stifel, in trust to secure a debt of $700.00, due to John Louis Stifel; on the 12th day of February 1864, the said trustee, after selling the land at public auction, conveyed it to William S. Campbell, trustee for Theodosia McGinnis and Clarissa Campbell; and on the 29th day of December 1874, the legal heirs of the said Clarissa Campbell conveyed to Theodosia McGinnis all their title to said lot. They say they are the owners in fee of said lot, *and that they and those under whom they claim "have been in continuous and uninterrupted posession of said lot since the year 1847, and have held such posession adversely to said complainant and all other persons, and these defendants still hold such possession; that said complainant has not during the said period claimed any right or title to the said lot, or to any part thereof*; that in the year 1831 when the said property belonged to the said John McLure, a frame building was erected *thereon* by the said McLure, which frame building stood so erected, without removal or change of position, from that time until the year 1872, when a portion of the said frame building, on the rear part of said lot, was torn down by these defendants, and a brick building was by them erected in its place and upon the same ground occupied by it;" that in the month of June 1875, the defendants tore down the remaining portion of said frame building, and have erected the foundation wall for a new brick building, which they are erecting in its place, and on *exactly the same ground formerly occupied by it*, and as an addition to the rear building so erected by them in 1872. They say that the building, they are now erecting, is according to a plan of which the said rear building is a

part, and if they are compelled to change the location of the wall, they will be obliged to change their entire plan of the building, and the rear building will be comparatively useless, and they will suffer severe loss and damage &c; and they pray that the injunction be dissolved and the bill dismissed. The answer is also sworn to.

Copies of the several deeds referred to in the answers are filed therewith, and the description of the property is substantially the same in all of them. In the first from John McLure and wife to Kammer, the description is as follows:

"Beginning at the south corner of Madison street and east of Market street, thence south with Market street, twenty nine feet, more or less, to the frame house now owned and occupied by Samuel G. Robinson; thence toward the east, parallel with Madison street, seventy-two feet; thence parallel with Market to Madison and thence with Madison street to the place of beginning."

*The city proved clearly that the said frame house stood, and the foundation wall for the new house now stands twenty one-inches over the line of and on Madison (now Tenth) street.*

*And the defendants as clearly proved, that the old frame house had stood where the wall now is, continuously and uninterruptedly, for over forty years prior to the institution of this suit.*

On the 9th day of November 1875, the case was heard on the bill, answers, proofs and motion to dissolve and the circuit court dissolved the injunction.

From this order an appeal was granted.

JOHNSON, JUDGE, delivered the opinion of the Court:

The first question presented in this case is: was there a dedication to the public of Madison or Tenth street? The bill alleges that there was, and a use of the street as such for more than forty years. The answer does not deny this. It admits, "that the commissioners named in the bill, were appointed by the county court of Ohio

county, pursuant to an act of the Legislature of Virginia, passed January 29, 1824; and that four of said commissioners made a survey of the town of Wheeling, and marked the several streets and alleys of said town, and made a plat of said survey, which is recorded in the office of the clerk of the county court of Ohio county, as alleged in complainant's bill. But these defendants allege that said plat was not recorded in said clerk's office until the year 1870, and that it is of no legal force or effect, as evidence of the boundaries of the streets within the city of Wheeling, because it was not recorded in said office before the year 1835; and these defendants deny that the paper filed by the complainant as ' Exhibit 3' of its bill, is a true copy of any part of said plat."

The answer further admits that Madison street, now Tenth, extending from the Ohio river eastwardly, crossing Main and Market streets, had been for a long time used as a public street by the inhabitants of the town and city of Wheeling; but does not admit, as respondents did not know, that the ground, over which the street passes, was ever dedicated by the owners thereof as a street, and calls for proof thereof. It denies that the ground occupied by the defendants was ever so dedicated by the owners, or used for the purpose of a street. The answer exhibits the deeds, under which respondents claim, which describe the lot as bounded on one side by the said Madison, now Tenth street. The evidence shows that the street existed before the house of respondents was built; and the plat that respondents admit was made pursuant to the order of the county court, which plat was made in 1829, two years before the alleged encroachment on the street by building the house, in part thereon, shows that said street was of the uniform width of sixty-six feet. We conclude therefore that, the record shows that said street was dedicated to the public, by the long use thereof by the public as a street; and that it was so recognized by the property holders on said street; and that its uniform

width was sixty-six feet. See Judge Green's opinion in *Pierpoint* v. *Town of Harrisville*, 9 W. Va. 221; *State* v. *Woodward*, 23 Vt. 99. It is unnecessary to discuss the effect of not recording the plat, until 1870, as it is immaterial to make such inquiry in this cause.

The defendants rely upon an adverse possession in them, and those under whom they claim for more than forty years. It is now too well settled to be controverted, and indeed it is not denied in this cause, that if the statute of limitations will apply to a case at law, it will by analogy be applied to a cause in chancery. But it is ably insisted by counsel for plaintiff, that the statute has no application in this case; that here, the maxim, *nullum tempus occurrit regi*, applies with all its force, and cites a number of pertinent authorities, to sustain the position.

The first case cited is *Cross* v. *Mayor &c.*, 18 N. J. Eq. 311. The bill was filed to prevent the authorities of Morristown from widening the street, and thereby taking ground of the plaintiff, which he had held in possession for about twenty-six years. The chief justice, in delivering the opinion of the court, said : " If encroachments of this public street exist, such encroachments, no matter how ancient and long continued, are clearly public nuisances, and as such abatable. The claim that this public easement has been curtailed by acquiescence and lapse of time, has no foundation in legal principle. Such I have always understood to be the well established rule of law upon this subject.  *  *  * It is true, that in this country this rule of common law has in few instances been rejected ; but nevertheless it is sustained, I think, by a great preponderance of American authority.  *  *  * It is a principle of policy, and appears to have been thought almost indispensable for the protection of those privileges, in which the whole community is interested ; and it may well be doubted, if it does not exist in some form in the jurisprudence of every civilized people." The injunction was dissolved. This decree was rendered in 1867.

*Drygest* v. *Schenck*, 23 Wend. 446, cited by counsel for the city, was a suit brought to recover damages for injury to a mare, which fell through a bridge in a public highway. The road passed over the land of the defendant, and he had dug a ditch across the road, and put a bridge over it, but had neglected to keep it in repair, claiming that he was not bound to do so.

While the judge used the following language quoted by counsel for the city, that "no length of time will legalize a nuisance for the very reason while it continues a mere trifle, no one thinks of taking measures to have it removed, and thus the public would be sure to suffer;" yet it can have no application to this case, because the defendant there was not attempting to hold adversely to the public. In *Jersey City* v. *State*, 1 Vroom 521, was a controversy as to the right to widen a street, where there had been long continued possession of the ground, and the chief justice in his opinion said: "While the city is in its nascent state, and before the streets are improved, little regard is had to strict street lines. Encroaching lot owners sometimes for temporary convenience, and at other times intending permanently to acquire the lands, often build within the street lines, they did so in this case; but by so doing acquired no right of permanent possession or title. The contrary doctrine would effectually destroy great public rights in all cities, which like Jersey City depend upon the doctrine of dedication for the preservation of their parks and streets." The next case cited by counsel for the city, is *Simmons* v. *Connell*, 1 R. I. 519. That was an action of trespass for breaking and entering the close of the plaintiff, &c. The defendant was surveyor of highways of the town of Tiverton, and had entered upon the premises, which were claimed by him to be part of the highway in said town, for the purpose of amending and repairing said way. It was proved in the case, that the land in question had been for more than twenty years in the exclusive possession and enclosure of the plaintiff and those under whom he claimed. There was

a verdict under the instructions of the court, for the defendant; and the plaintiff took the case to the Supreme Court of the State; and that court held that "long possession under claim of right is evidence of right, if not interrupted or disturbed; and twenty years' possession is in general deemed conclusive as between individuals. But it is not so against the king or sovereign; the same rules, which apply to individuals, do not apply to the public or the State." In *City of Philadelphia* v. *Philadelphia & Reading R. R. Co.*, 58 Penn. 263, it was held "that the public are not to be deprived of their rights by encroachment. Buildings, erected on public grounds or on highways, acquire no right, either on account of time or expenditures." See also *Commonwealth* v. *McDonald*, 16 Serg. & R. 401. But in this case Rogers, Judge, in a dissenting opinion said: "I cannot exactly agree with the broad proposition laid down, that no length of time, coupled with the enjoyment of a right of property, will be a bar to an indictment for a nuisance. I look upon it as a doctrine of the most extensive nature, and alarming in its consequences. It will affect more or less most of the towns in Pennsylvania, and may lead to a scene of controversy destructive to private rights and the public peace." See also *Rung* v. *Shoneberger*, 2 Watts 23. In *Mayor* v. *Magnon*, 4 Martin, (La.) 1, it was held that "Land not susceptible of alienation cannot be acquired by prescription." In *Commonwealth* v. *Alburger et al.*, 1 Whar. 469, there was an indictment against *Alburger et al.* for a nuisance in the erection of a certain fence and wooden building upon Franklin square; the defendants were the trustees, elders and deacons, of "the German Reformed Congregation in the city of Philadelphia," and claimed the exclusive right to the occupation of a portion of said square, under a warrant from Thomas Penn, the then proprietor, dated the 18th of June 1741, a survey made in December 1763, and a patent granted in the same month and year. It was held by the Supreme Court that, "it is well settled

1877.
Special Term.

City of Wheeling
v.
Campbell et al.

that lapse of time furnishes no defense for an encroachment on a public right, such as the erecting of an obstruction on a street or public square * * * * These principles indeed pervade the laws of the most enlightened nations, as well as our own code, and are essential to the protection of public rights, which would be gradually frittered away, if the want of complaint, or prosecution gave the party a right. Individuals, may reasonably be held to a limited period to enforce their right against adverse occupants, because they have interest sufficient to make them vigilant; but in public rights of property each individual feels but a slight interest, and rather tolerates even a manifest encroachment, than seeks a dispute to set it right." In *Barter* v. *The Commonwealth*, 3 Pen. & Watts 253, it was held, "that the title of a corporation to the soil for uses that conduce to the public enjoyment and convenience is paramount and exclusive; and no private occupancy for whatever time, and whether adverse or by permission, can vest a title inconsistent with it." In *Mayor of Jersey City* v. *Morris Canal & Banking Co.*, 1 Beas. 561, the judge in delivering the opinion of the court said, "and the Supreme Court of Vermont in *Kight* v. *Heaton*, 22 Vt. 480 held, that the enclosure and occupation of land within the limits of a highway for twenty years; under a claim of right, made title by prescription against the public in the occupier. To this case I cannot yield my assent; it would render valid, clear encroachments upon public highways, which in every part of our State are a source of constant complaint and vexation. Some of our highways have been so narrowed by encroachments as to be almost impassable; it is an application of the doctrine of adverse posession uncalled for, and eminently disastrous to the public interests."

There is a dictum of the Judge in *Mayor and Aldermen of Memphis* v. *Leonore*, 6 Coldw. 412, to the effect, that adverse possession for the time prescribed by the statute would not be available against the proceedings of the

city to abate a nuisance. Judge Dillon, in his work
on Municipal Corporations, collects the cases on this
subject in his notes, and comes to the following conclu-
sion in section 533: "Upon consideration, it will per-
haps appear that the following view is correct: Munici-
pal corporations, as we have seen, have in some respects
a double character: one public, the other (by way of
distinction) private. As respects property not held for
public use, or upon public trusts, and as respects contracts
and rights of a private nature, there is no reason why
such corporations should not fall within limitation
statutes, and be affected by them. For example, in an
action on a contract or for tort, a municipal corporation
may plead, or have pleaded against it, the statute of
limitations. But such a corporation does not own, and
cannot alien public streets or places, and no laches, on
its part, or on that of its officers can defeat the right of
the public thereto; yet there may grow up in consequence
private rights of more persuasive force in the particular
cause than those of the public. It will perhaps be found
that cases will arise of such a character, that justice re-
quires that an equitable estoppel shall be asserted even
against the public; but if so, such cases will form a law
unto themselves, and do not fall within the legal operation
of limitation enactments. The author cannot assent to
the doctrine, that as respects public rights munici-
pal corporations are within ordinary limitation statutes.
It is unsafe to recognize such a principle. But there is
no danger in recognizing the principle of an *estoppel in
pais* as applicable to such cases, as this leaves the courts
to decide the question, not by the mere lapse of time,
but by all the circumstances of the case, to hold the
public estopped or not, as right and justice may require."

In the case of *The Inhabitants of Arundel* v. *McCol-
lough*, 10 Mass. 75, cited in the case of *Commonwealth* v.
*McDonald*, *supra*, we do not think the case sustains the
position taken by the learned judge who cites it; all the
court says upon the subject is: "In this case no such

authority has been given (*i. e.* to build the bridge over the stream); and the only claim of a right to continue the bridge rests upon the antiquity of the bridge, and the laying out of a road over the river in the year 1771. But we think neither of those facts sanctioned the obstruction of the river, so as to prevent those who had occasion to transport vessels up and down, from removing it, if necessary, to a safe and convenient passage. Public rights cannot be destroyed by long continued encroachments; at least the party who claims the exercise of any right, inconsistent with the free enjoyment of a public easement or privilege, must put himself on the ground of prescription, unless he has a grant, or some valid authority from the government; and a right by prescription does not exist in the present case."

The case of *Henshaw* v. *Hunting*, 1 Gray 203, was cited to sustain the position of the court, in the case of *Jersey City* v. *Morris Canal and Banking Co., supra,* and we cannot see that it does so, but is rather an authority on the other side. In delivering the opinion of the court, Merrick, Judge, used the following language: "The objection of the plaintiff, that if First street was legally laid out, as before mentioned in 1805, he has since acquired a title to the land, over which it was laid, by adverse possession for more than twenty years, cannot upon the facts argued be sustained. First, because as has already been stated the plaintiff shows no deed to himself of the land in controversy from any former occupant; and secondly, because his possession and the possession of those, who preceded him, was perfectly consistent with the rights of the town of Boston. The very nature of the rights vested in the town, by the laying out of the streets in South Boston, rendered it impossible that there should be, as against them, any adverse possession until an official order or adjudication was made that the street should be completed. There never having been any such order for the completion of that part of First street now in controversy previously to the year 1851,

ho prior possession or occupancy of the land within its limits was adverse to the rights of the city of Boston, and no title destructive of their rights could in that way have been acquired" This is all that is said in the case upon the subject; and there is nothing in it that supports the position that the statute of limitations will not run against a municipal corporation; but on the other hand it seems to recognize the fact, that the rights of the city might be defeated by a sufficient adverse possession.

The line of decision in Pennsylvania on this subject seems to have been broken by the unanimous opinion of the court in *Evans* v. *Erie County*, 66 Penn. St. 222, decided in 1871. The following act was on the 8th of April, 1833, passed by the Legislature of Pennsylvania: "The tract of land now owned by the commonwealth of Pennsylvania on the bay of Presque Isle on Lake Erie, and known as the third section of in and out lots of the town of Erie, the streets of which are hereby vacated, be and the same is hereby granted to the borough of Erie, to construct a canal basin in the bay of Presque Isle opposite the borough of Erie; and the burgess and town council of the said borough for the time being shall, as soon as conveniently may be, lay out the said third section in lots or tracts, as to them may seem best, having regaid to the sale and settlement of said section, and expose the same separately to the highest and best bidder or bidders, and make to the purchaser or purchasers of said lots or tracts a good and sufficient deed in fee simple; and the said burgess and town council shall apply the money arising therefrom towards erecting the canal-basin aforesaid. Provided, that one hundred acres of the said land be reserved for the use of a poor-house for the county of Erie, to be selected by those persons appointed by the commissioners of Erie county for that purpose."

The commissioners made the selection. Evans claimed a part of said one hundred acres; and at the time of

the institution of the ejectment suit by the county, the said Evans, and he under whom he claimed, had held open, notorious, continuous and uninterrupted possession of said land for over forty years.

The court instructed the jury, that the statute of limitations would not apply; and verdict and judgment were rendered for the plaintiffs; and the defendant obtained a writ of error. Judge Sharswood, who delivered the opinion of the whole court, said: " The learned Judge permitted the plaintiffs to recover on this title, doubtless, as trustees of the charity. Yet he considered that the defendant was not entitled to avail himself of the bar of the statute of limitations, because, as he instructed the jury, it belonged to the commonwealth, and against her no length of possession would give title." We think that the learned Judge fell into manifest error in refusing to affirm the defendant's second point as to the statute of limitations, and by saying that there was no sufficient evidence given in the case to raise the question there propounded. The title of the commonwealth to the poor-house tract was divested by the act of 1833, and vested in the plaintiffs. As against them the running of the statute commenced on the day of the passage of that act, if the defendant was in peaceable and adverse possession of the land in controversy, and so continued until the commencement of the action. This was a period of more than thirty-one years.

That the statute of limitations runs against a county or other municipal corporation, we think cannot be doubted. The prerogative is that of the sovereign alone. *Nullum tempus occurrit respublica.* Her grantees, though artificial bodies created by her, are in the same catagory with natural persons. *Glover* v. *Wilson*, 6 Barr 290; *City of Cincinnati* v. *Evans*, 5 Ohio St. 594. The judgment was reversed.

This case seems to lay the doctrine down as broadly as any of the cases, that the maxim *nullum tempus, &c.*, applies to sovereignty alone, and that statutes of limita-

tion run against counties and other municipal corpora-
tions the same as against natural persons.   One strange
circumstance connected with the decision is, that it aban-
dons the long line of decisions on the subject in that
State without referring to them.

*Mowry* v. *City of Providence*, 10 R. I. 52, was a contro-
versy about a part of a lot which the city claimed was part of
a tract of land dedicated for a burying ground, training
ground, &c., by the proprietors of Providence in 1708,
bounded easterly on a street, and that having been dedicat-
ed to the public and accepted, no possessory title was of
avail against the public.   The court below charged, " that
the dedication was intended for the use of the people of
Providence, and not for the general public or the people of
the whole State ; and that the State had no interest in the
use thereof, as in the case of highways ; and that if it was
dedicated and accepted for the purposes described in the
vote, a title to it might be acquired by adverse possession."
The court on appeal so held ; saying by Potter, Judge :
"We conclude that this was a dedication, or gift to a
charitable use, not for the whole public, but for a limited
portion of the public, and that the doctrine of adverse
possession will apply to it."

This is a distinction not made in any of the cases we
have cited.   It might with equal propriety have been
drawn in the case of *Evans* v. *Erie County, supra* ; for a
*poor house farm* for the County of Erie was certainly not
intended for the general public any more than the *bury-
ing ground* in the city of Providence was.   It is a dis-
tinction that might as easily have been made in the case
of *Commonwealth* v. *Alburger et al., supra,* 1 Whar. 469,
for it seems to us that *Franklin Square,* in Philidelphia,
was no more dedicated to the *general public* than, the
*poor house farm,* or the *burying ground* ; and yet in this
case the supreme court of Pennsylvania held, that the ad-
verse possession of about one hundred years would not
protect the defendants, while in the case of *Evans* v. *Erie
County, supra,* the same court held, that as to the poor

house farm of the county, the statute of limatations did
bar recovery. The distinction taken in the last Rhode
Island case, is one not made in any of the cases we have
examined; and we do not think it is founded in good
reason.

I propose now to refer to a number of decisions
of the courts of last resort of different States which
recognize the doctrine, that municipal corporations are
like individuals subject to the effect of statutes of limi-
tation.

In the case of *Kelley's lessee* v. *Greenfield*, 2 Harris &
McHenry 138, decided in 1785, the judge who pro-
nounced the opinion of the court, uses the form of ques-
tions and answers, and the following question is found on
page 137, and the answer thereto on page 138.

"Had the proprietor the *same rights* with respect to
*Maryland* that the *king* of Great Britan had *in England*
in consequence of the fifth section in the charter to him
by the king from his being Lord of the fee?" The
answer is: "we are clearly of opinion he had *not*. His
rights were derived under the charter, the 4th section
of which grants to him, "all and singular such ample
rights, jurisdictions &c., as any *Bishop* of *Durham* within
the Bishopric or county palatine of *Durham* had."
The law writers upon the subject of the palatinate rights
* * * in enumerating the rights, have never placed
them upon a footing, with the courts of the king and the
maxim *nullum tempus occurrit regi* has never been ap-
plied that we can find to any but the king himself." In
Vermont, by express statute in 1850 the State is not ex-
empt from the statute of limitations. In *Knight* v. *Heaton*
22 Ver. 481, Redfield, Judge, said: "We see no good
reason why one may not set up prescription and pre-
sumptive rights against the public as well as against
individuals; and there is perhaps no good reason why
such prescriptions should not apply as well against the
public as in their favor. In the case of *Varick* v. *The Cor-
poration of New York*, 4 Johns. Ch. 53, it appears to have

been admitted as a fact, that the plaintiff and those under whom he claimed had had uninterrupted possession of the premises, claiming them as their own, up to the extent of their possession north, for upwards of twenty-five years before the filing of the bill ; and that the stable, fence &c., were all that time standing on the line on St. David street, to which he claimed. Chancellor Kent said : "After such a length of time it is right and just, that the plaintiff should be protected in the enjoyment of his property, and that he should not be disturbed by any act or entry of the corporation of the city, under the pretence or allegation, that the fence and buildings stand or encroach on part of the public highway. The defendants must first acquire possession of the ground in dispute, not by forcible entry, but by the regular process of law, before they can be permitted to use it as a street. The injunction, which was granted upon the filing of the bill, went no further than to restrain the defendants from entering upon and digging and throwing down and destroying the land, *so possessed by the plaintiff*. The injunction was not intended to interfere with the defendants in digging down the street close up to the line possessed by the plaintiff, though such digging might by necessary consequence cause the soil of the plaintiff consisting of sand and gravel to fall in upon the excavated street. Whatever might be the right of the parties growing out of such fact, it was not the purpose of the injunction to interfere with such a case. The principle, upon which the injunction so modified is to be upheld, is that after a claim of right, accompanied with actual and constant possession for twenty-five years and upwards, the corporation of New York cannot be permitted, without due process of law, to enter upon the possession of the plaintiff and pull down buildings, fences, &c., under their right to regulate highways. The injunction must be continued and made perpetual, or until the defendants have established at law their right to the ground in question." I have found nothing

1877.
Special Term.

City of Wheeling
v.
Campbell et al.

in any of the cases which I have examined in the reports of the courts of New York, that is in opposition to the principles enunciated in the above cited opinion of Chancellor Kent.

In *The Inhabitants of the Town of Litchfield* v. *Wilmot*, 2 Root 288, it was held that, "fifteen years uninterrupted possession of a highway will be a bar to the town's right of recovering it for the use of a highway." This case was decided in 1795, and the decision was controled by a statute of Connecticut, limiting the pulling down and removing encroachments on highways as well as on common land to fifteen years.

*Armstrong* v. *Dalton*, 4 Dev. 368, was an action of *assumpsit* by the plaintiff, as chairman of the Stokes county court, against the defendant, the executor of David Dalton, for money paid to the testator, as treasurer of public buildings, and not accounted for. The plea was the statute of limitations. The judge charged the jury that, "the statute of limitations did not bar the State; and inasmuch as the Legislature had delegated to the county courts, for more convenient administration of justice, a portion of the sovereign power, it did not bar their action, the money claimed being the property of the public." There was verdict for plaintiff, and defendant appealed.

Daniel, Judge, in delivering the opinion of the court said : " Public corporations, as distinguished from private corporations, are such as exist for public political purposes only, such as counties, cities, towns and villages. They are founded by the government for public purposes, and the whole interest in them belongs to the public, viz : to the county, towns, &c. But the reason which upholds the rule of *nullum tempus*, &c., when applied to the sovereign, does not in our opinion, excuse the *laches* of the officers of these small communities. The plea of *nullum tempus*, &c., is as before mentioned, one that peculiarly belongs to the sovereign, or to the commonwealth, to be exercised for the public good. * * * The king, or State cannot be pre-

8

sumed to mean wrong, or to have an interest inconsistent with justice. But these communities, like the individuals who compose them, have no such legal presumption in their favor. No authority is shown to support the position, that they are not like other corporations, or private persons, subject to the operation of the statutes of limitations; nor can we see any reason which can bring them within the exception, which is admitted to apply to the sovereign and the State." The judgment was reversed.

In South Carolina, it was held that a continued and adverse obstruction for ten years, of a right of way by the owner of the soil over which it passes, bars under the statute of limitations, the right to the easement. *Bowen* v. *Learn*, 6 Rich. 298. The way referred to in this case, was a private way, but such ways are also public. *State* v. *Pettis*, 7 Rich. 390.

In the case of *City of Galveston* v. *Manard*, 23 Texas, Roberts, Judge, after citing with approbation, *Rowan's ex'or* v. *Town of Portland*, 8 B. Mon. 259, said: " Our statute of limitation of five years confers upon the possessor, ' full title, precluding all claims' except that of the government, and saving the disability of marriage coverture, or insanity. By our statute also the right of entry is barred in ten years. It has often been held, as to ways and water courses, that if the right of entry be barred, the right of recovery is lost. The possession that will give title to a street, under this statute, should not only be under claim of a deed, &c., but it should be adverse, and so exclusive in its nature as to give notice unequivocally, of an assertion of individual right to the street. This strictness in the rule, as to possession of streets and other common property, results as a necessary consequence of the character of the property, and the uses to which it is applied. Nothing short of a visible appropriation of it, to the exclusion of the public, except at the discretion of the possessor, can in such case be held to be adverse." *Rowan's*

*ex'rs* v. *Town of Portland*, 8 B. Monroe, 232, cited in the above case in 23 Tex., was a contest as to the right to part of a street in said town. Chief Justice Marshall, of the Supreme Court of Appeals of Kentucky, in delivering the opinion of the court, at page 259 says: "It only remains then, to enquire how far any portions of the slip in question have been freed from the dedication to the public, and become private property by an adverse possession, and claim of individual right for twenty years before this suit was brought. That the public right, as growing out of the dedication in this case, was subject to be diverted and defeated by such possession admits, as we think, of no doubt. The dedication was not to the use of the commonwealth, as a corporate being, and invested no title or interest in it. The maxim, *nullum tempus occurrit regi,* is therefore inapplicable."

*Dudley* v. *Trustees of Frankfort,* 12 B. Mon. 610, was an injunction by Dudley to restrain the said trustees from interfering with his property on Mero street, in said town. The marshal, acting under authority of the board of trustees, was about to execute the order of said board, to remove obstructions on said street, the enclosure of said Dudley, claiming it was on the street when the injunction was obtained. The plaintiff claimed the property as his own, and relied on the statute of limitations. Hise, Judge, who delivered the opinion of the court of appeals, said: "If the private citizen at any time encroach with his buildings and enclosures upon the public streets, the municipal authorities should, in the exercise of proper vigilance and of their undoubted authority, interfere by the legal means provided in their charter, to prevent such encroachment in *due time,* and thus preserve for public use the squares, streets and alleys of the town, in their original dimensions; but if a private individual, or citizen, has been permitted to remain in the continued adverse actual possession of public ground, or of a public street, or of part of a street, as embraced within his enclosure, or covered by

his dwelling or other buildings, for a period of twenty years or more without interruption, such citizen will be vested thereby with the complete title to the ground so actually occupied by him; and a title, thus perfected by time, will be just as available against a municipal corporation, as it would be against an individual, whose elder title and right of entry, may be barred by a continued adverse possession for twenty years of his land; a municipal corporation, or any other artificial body vested with corporate rights and functions, has no more right than a natural man to claim the benefit and advantage of the maxim *nullum tempus occurrit regi*." The same doctrine was held in *Alves, &c.* v. *Town of Henderson*, 16 B. Mon. 131. In *Clemants* v. *Anderson et al.*, 46 Miss. 581, it was held that the maxim *nullum tempus, &c.* in analogy to the reason and policy of the principle, should be extended in America to those organisms of government, which have the attributes of sovereignty, as the United States and the several States, and not to those local bodies, such as cities and counties, which are derivatives and emanations of the sovereign, created for the purposes of local convenience, subject at all times to be changed and modified at the pleasure of the government.

In *County of St. Charles* v. *Powell*, 22 Mo. 525, the court held, that " the immunity," (from the effect of limitation statutes) " however it seems, was even at common law, an attribute of sovereignty only, and did not belong to the municipal corporations or other local authorities established to manage the affairs of the political subdivisions of the State." To the same effect is: *School Directors of St. Charles Township* v. *Georges et al.*, 50 Mo. 194. In *The City of Cincinnati* v. *Evans*, 5 Ohio St. 594, it appeared that in the year 1852, the city, by order of the city council, removed the front of a store house belonging to Evans on Main street, in which he was carrying on the business of a merchant tailor. Evans brought an action against the city to recover for the injuries

sustained by the removal of the front of his building, and

the consequent interruption to his business. It appeared from the bill of exceptions taken at the trial below, that the plaintiff produced evidence tending to show, that he erected his building on what was then supposed to be, and which he still contended to be the original line of the street; and that the line was "given by the city surveyor;" that the houses both above and below him were built upon the same line with his house; and that he had occupied the ground since 1822.

This evidence was objected to and the objection overruled and the evidence permitted to go to the jury, to which ruling the defendant excepted.

On the other side evidence was produced going to show that Evans had built over the original line of the street, as laid out by the original survey; that this line was established by well know corners, land marks and secondary monuments; that it had been built as far back as 1818, and that the Evans building, at the time of the removal of the front thereof, was over the line of the street and in the street; and that only so much thereof was removed, as projected into and over the street. The court instructed the jury substantially, that whatever had been the original line of the street, if the plaintiff had for more than twenty-one years held and occupied the ground adversely to the city, claiming it as his own, the city had no right to disturb him in his possession.

The verdict was for the plaintiff and judgment entered thereon, to which judgment the defendant, the city, obtained a writ of error. In delivering the opinion of the court, Ranney, chief justice, cited *Lessee of the City of Cincinnati* v. *The First Presbyterian Church*, 8 Ohio 298, and made the language of the court in that case his own, which is: "that municipal corporations are subject to the operation of the statute of limitations in the same manner and to the same extent as natural persons, and as a consequence that notorious and uninterrupted possession by a private individual, under a claim of right, of land

dedicated to a city for streets or public squares, for more than twenty-one years, will bar the claim of the city to its use." He further said: "this case (in 8 Ohio) was decided in 1838, was fully argued by eminent counsel, and carefully considered by the court. In following it now, we not only yield the respect due to the decision of a court of last resort, which has so long been supposed to have settled the law, but with a full approval of the principles upon which it is founded." . These decisions were again approved in *Lowe* v. *Kennedy, et al.* 13 Ohio St. 42.

*The City of Peoria* v. *Johnston,* 56 Ill. 45, was an injunction by Johnston to enjoin the city from taking possession of land about sixteen feet wide, then forming a part of complainant's enclosure between his house and Main street, in said city, and from making it a part of the street. The city answered, proofs were taken, and the injunction made perpetual. The only ground, upon which the city claimed the right to a part of the complainant's enclosure, was the dedication thereof by its former owner, Hale. The complainant had held undisturbed possession of the property for twenty-eight years prior to the institution of his suit. The city appealed, and the chief justice in delivering the opinion of the court said: "Conceding this highway was laid out as claimed by appellant, and conceding there was an intention to dedicate the premises on the south-east of section 4, we are of the opinion that the adverse possession of the appellee, open and exclusive, as it has been, and the complete non-user of the easement by the public for more than twenty years, are a sufficient answer to the claim now made by the city." The decree was affirmed.

In *C. R. I. & P. R. R. Co.* v. *City of Joliet,* 79 Ill. 40, the judge who delivered the opinion of the court, quoted the above language, and added: "We would not be understood in making this citation, as sanctioning the language thus used in its full breadth, that in such case the mere non-user of the easement by the public for

more than twenty years, would bar the claim, but the reference is made as having pertinence here, under the facts of this case."

There is one case in Virginia, bearing directly upon this subject. *City of Richmond* v. *Poe, trustee,* 24 Gratt. 149, was an injunction obtained by said Poe, trustee, for Mrs. Bradley T. Johnson, to enjoin the city of Richmond from proceeding to widen Franklin street by extending its northern line so as to include a part of the lot held by said trustee. The ground, on which he rested his claim to enjoin the city, was that he and those under whom he claimed, had been in possession of said lot from 1809 to 1871, when the bill was filed. The city relied upon a dedication of the ground as a public street, prior to the time the oldest deed, under which plaintiff claimed, was executed. The injunction was perpetuated, unless and until the city should acquire the legal right to widen the street in the manner prescribed by law. From the decree perpetuating the injunction the city appealed. The chancellor who rendered the decree in the court below said: "But in this case the ground was enclosed, and there was adverse possession for over thirty-five years acquiesced in by the city; and this would have destroyed the right of the city if it ever existed."

Judge Moncure who delivered the opinion of the court referring to the opinion of the chancellor, which was made a part of the record in the cause, said: "That opinion covers the whole case, and strongly presents the principles upon which it rests, and as we entirely concur in it, we deem it sufficient to express such concurrence, without adding anything to what is there said, or saying substantially the same thing in different words." The decree was affirmed.

As bearing upon the subject, see *Manchester Cotton Mills* v. *The Town of Manchester,* 25 Gratt. 825; *The City of Pella* v. *Scholte,* 24 Iowa 283, decided in June 1868, was a contest as to the right of the city to a certain plat of ground in said city designated, on the plat thereof as

"Garden Square." The city filed a petition in equity, claiming against the defendants, the original proprietors of Pella, and who laid out the same, that the said "Garden Square" was dedicated to the public; and that the defendants, H. P. Scholte and his wife (his voluntary grantee) denied the public right, and obstructed the public enjoyment of the square; and prayed to have its right to the control of the square judicially established. The defendants answered denying the alleged dedication of the square to public use, and setting up the statute of limitation, averring eighteen years quiet, uninterrupted use and enjoyment of the square as their private property. Upon the issues thus made proofs were taken, and the court below dismissed the petition, and the city appealed.

Chief Justice Dillon, in delivering the unanimous opinion of the court said: "Under these circumstances, the question recurs, whether (assuming that there had been a dedication of the square in 1847 or 1848) the defendants may insist upon the bar of the statute of limitations. It will be assumed that the statute would not begin to run in favor of the defendants, until the town or city was incorporated, charged with the duty of watching, and possessed with the power of asserting and protecting the rights of the intended donor. The city was organized August 5, 1855. This suit to assert the right of the city to the square, was not brought until February 26, 1866, more than ten years after the incorporation of the plaintiff. To actions of this character, though brought in equity, the ten years limitation applies directly, or by analogy. This is not disputed by counsel. * * * Rights of this character may be acquired by the public by the requisite user. *Onslott v. Murray*, 22 Iowa, 457. And it would seem reasonable that the public, with knowledge of its rights, and of the adverse claim of an individual, may lose these rights in a similar manner. Of course it is well understood, that statutes of limitation do not constructively apply to the

State or sovereignty. But the principle has not, so far as we know, been extended to municipal or public corporations. On the contrary, it has been expressly held, that those corporations are within the statute of limitations the same as natural persons. *Cincinnati* v. *The Church*, 8 Ohio, 298, 1838; followed in *same* v. *Evans*, 5 Ohio St. 1855; see also *Rowan* v. *Portland*, 8 B. Mon. 250, 258; *North Hempstead* v. *Hempstead*, 2 Wend. 109, 137; *Denton* v. *Jackson*, 2 Johns. Ch. 320, 338.

" Whether there may not be some limitations on this general doctrine, arising out of the want of knowledge of the public corporation or its officers, of its rights, or of the adverse right, to be asserted against it, we need not stop to enquire. For in this case the right claimed by the defendant has been openly asserted by him, and fully known to the city ever since its first organization. The present case is therefore a proper one for the application of the statute, or the principle of repose on which it rests."

This is the same Judge Dillon, who not long after the above opinion was announced published his excellent work on " Municipal Corporations," in which he says, in sec. 533: "The author cannot assent to the doctrine, that as respects public rights, municipal corporations are within ordinary limitation statutes. It is unsafe to recognize such a principle." What new light had dawned upon the distinguished judge after he had written his lucid opinion in *Pella* v. *Scholte?* He certainly had not ascertained that the current of the decisions on the subject was against him; for the review we have made of the authorities cited in his notes shows, that to sustain his *opinion* they are as a river, while to support the *text in his work* they are as a rivulet. We think he was right in his *opinion*, and wrong in his *text book*. The *judge* in this case is better than the *author*.

Judge Dillon in section 533 of his work, gives as a reason why no laches on the part of a municipal corporation, or its officers, can defeat the right of the pub-

lic to public streets and places, that such corporation does not own and cannot alien such public streets or places. But we think this reason is not sound. The doctrine of adverse possession, does not result from a presumption after a long lapse of time, that the party, against whom the adverse possession is held, has granted the property to the party in possession; but it is held under a claim of title independent of the party, who originally owned the land. As the maxim *nullum tempus, &c.,* only applies to sovereignty, and the sovereign cannot transmit it to persons or corporations, a municipal corporation cannot claim exemption under it, any more than a natural person, although it may hold property in trust for the public.

As we have seen the courts of last resort in the States of Pennsylvania, New Jersey, Rhode Island and Louisiana, have held that the maxim *nullum tempus occurrit regi* is not restricted in its application to sovereignty, but that it applies to municipal corporations, as trustees of the rights of the public; while on the other hand, the highest courts of Vermont, Massachusetts, New York, Connecticut, Maryland, Virginia, North Carolina, South Carolina, Mississippi, Texas, Missouri, Kentucky, Ohio, Illinois and Iowa, have restricted the application of the maxim to sovereignty alone; and most of said courts have, in express terms, in cases requiring the decision, held that municipal corporations like natural persons, are subject to limitation statutes. While able judges have held the former doctrine, we have Chancellor Kent, Judges Redfield, Marshall, Moncure, Ranney, and other eminent jurists holding to the latter, and Judge Dillon, perhaps no less distinguished than any of the others, on both sides of the question.

We see no reason why municipal corporations should not be held to the same degree of diligence in guarding their streets and squares from encroachments, as natural persons are in protecting their property from the adverse claims of others. We do see great reason why no

time should bar the sovereign power, because the officers of the sovereign, whether king or state, have such various and onerous duties to perform, that the rights of the sovereign may be neglected; and all the people of the kingdom or state are interested in having the rights of the sovereign preserved intact, and not subject to be impaired or lost by the neglect of officers; but the same reason does not apply to a municipal corporations. A city or town is a compact community, with its city or town council, its committee on streets and alleys, and its street commissioner, whose special duty it is to see that the streets and alleys and squares are kept in proper order and free from obstructions and encroachments. And if with all this machinery and power confined to so narrow a compass and the interest of the corporation to exercise it, the city authorities permit an individual to encroach upon the streets, alleys or squares of the city and hold, enjoy and occupy the same, claiming them as his own under his title, without interruption or disturbance in that right, for the period prescribed in the statute of limitations, the city not only does, but we think according to reason as well as authority, ought to lose all right thereto. In Virginia it has always been held that the maxim *nullum tempus &c.*, applies to sovereignty, and Judge Lee in *Levasser* v. *Washburn*, 11 Gratt. 572, in giving the reason for the maxim said: "The reason sometimes assigned why no laches shall be imputed to the king is, that he is continually busied for the public good, and has not leisure to assert his right within the period limited to subjects. A better reason is the great public policy of preserving public rights and property from damage and loss through the negligence of public officers. This reason certainly is equally if not more cogent in a representative government, where the power of the people is delegated to others, and must be exercised by them if exercised at all; and accordingly the principle is held to have been transferred to the sovereign people of this country, when they succeeded to the

1877.
Special Term.

City of Wheeling
v.
Campbell *et al.*

rights of the king of Great Britian, and formed independent governments within their respective States."

This principle we approve, and regard the exemption from the effects of limitation statutes, as essential to the well-being of the government of the State ; but this exemption belongs and appertains to sovereignty alone. The reason for it is very apparent. If the statute of limitations would run against the State, her public lands, if she had any, would be liable to be taken from her by squatters, who would hold them for the time prescribed by the statute, and defy the State ; and in those portions of the State sparsely populated, there would be few or none to complain, as it would be the cheapest way to obtain lands from the State. The highways of the State would be liable to be impaired or destroyed by encroachments, and the country not being thickly settled, and the neighbors all acquainted with each other, and the State officers being remote from those highways, there would perhaps be little complaint. But in a city or town, where so many people are to suffer inconvenience by such encroachments, and the officers of the city or town are on the spot, such encroachments are not apt to be tolerated for a long period ; and they would be less likely to be tolerated, if it were known that an uninterrupted possession of a street, alley or square, would in a certain number of years give title to the occupier. The wholesome doctrine, that no time shall bar the State, has been abolished by a section in the Code of West Virginia, which if allowed to remain until ten years after it went into operation, may be fruitful of much mischief in this State. It is section 20 of chapter 35, and is as follows : " Every statute of limitation, unless otherwise expressly provided, shall apply to the State, but as to claims heretofore accrued, the time shall be computed as commencing when this chapter takes effect." This statute has no application to this cause, because after the time commenced to run, ten years had not elapsed before the suit was brought. The right to bring suit to recover land in

this State is barred in ten years. It is clearly proved in this cause, that the defendants and those under whom they claim, had prior to the institution of this suit forty years uninterrupted, open, notorious and continuous possession to the portion of Madison street in controversy, under claim of title thereto ; and such adverse possession gives the defendant the right to hold the same.

Having decided that the statute of limitation bars the right of the city to the portion of the street in question, we deem it unnecessary to determine whether or not this is a case, to which the doctrine of equitable estoppel will apply. We see no error in the order dissolving the injunction ; and it is affirmed with costs and damages according to law ; and this cause is remanded to the circuit court of Ohio county for further proceedings to be had therein according to the foregoing opinion, and the principles governing courts of equity.

JUDGES GREEN, HAYMOND and MOORE, concurred in the foregoing opinion.