AUGUSTUS J. BRUNSON

v.

THE BOARD OF FREEHOLDERS OF SOMERSET COUNTY.

[Decided October 25th, 1909.]

Where the title to land sought to be taken to widen a highway was in dispute and complainant was in the actual possession claiming title, which was not clearly in the board of freeholders of the county, complainant would be granted a preliminary injunction restraining the board from taking possession of the strip until their legal right had been settled; it appearing that to withhold the injunction would destroy complainant's freehold, to his irreparable injury.

On motion for preliminary injunction.

*Mr. J. Edward Ashmead* and *Mr. Richard V. Lindabury,* for the motion.

*Mr. John A. Frech, contra.*

HOWELL, V. C.

The complainant is the owner of a tract of land which lies along the northerly side of a public highway in Somerset county leading westerly from North Plainfield. The highway is called Green Brook road and runs in a course substantially east and west and was originally laid out in 1796 as a two-rod road. The board of freeholders are now engaged in improving the highway by widening, grading and macadamizing it. In the course of the widening the county finds it necessary to take possession of and to grade a strip of land running the whole length of the complainant's property on which are standing twenty-five trees of several varieties which were set out many years ago and have now attained great size. The complainant filed his bill to prevent the freeholders from taking this strip of property and the

trees thereon upon the ground that the title thereto and the possession thereof are vested in himself, and that no proceedings have been taken to condemn the said land or any part thereof, and that therefore the trespass is without compensation and is without his consent. The defendant meets this allegation by two statements—*first,* that the strip of land in question is within the boundary lines of the old two-rod road, and *second,* that the complainant in 1903 dedicated the land in question to public uses for the purpose of a public highway.

As to the first defence, viz., that the line is within the line of the old road, an affidavit is produced made by an engineer who surveyed or attempted to survey the centre line of the old highway, taking his data from the return of the highway surveyors made in 1796. He accompanies his affidavit with a map which shows the northerly line of the old location to include the strip of land in question and the trees.

As to the second defence, viz., dedication, the defendants say that, in 1903, the complainant joined with his neighbors in a declaration of dedication which was endorsed upon a map entitled "plan and profile of Green Brook road showing proposed widening and improvement from West End avenue to Rock avenue, borough of North Plainfield, April, 1903." This map shows the proposed road as widened, and I understand the allegations of counsel to be that if the road were widened in accordance with the notations of this map it would include the very land in question. The endorsement on the map reads as follows:

"We, being collectively the owners of all the land shown on this map, do hereby dedicate to the public so much thereof as lies within the solid black lines, being also thirty-five (35) feet on each side of the solid red line marking the centre line of Green Brook Road, widened, as shown on the map, for use as a public highway or driveway forever, said roadway or driveway to be from curb to curb seventy feet in width forever. Dated June, 1903."

This is signed by the complainant and eight other property owners, and was filed in the office of the county clerk of Somerset county on August 15th, 1903, but for some unexplained reason was afterwards taken from the files by some unknown person and the filing mark erased; it was eventually found a couple of years

ago in a desk in the common council chamber of the borough of North Plainfield. Two days after the filing of the map, and on August 17th, the borough of North Plainfield, within whose boundaries the lands in question lie, passed a resolution as follows:

"*Resolved*, That the dedication of Green Brook Road from West End Avenue to Rock Avenue as shown on map entitled 'Plan and profile of Green Brook Road showing proposed widening and improvement from West End Avenue to Rock Avenue, Borough of North Plainfield, April 1903,' and signed by Charles F. Debele, Charles Arnold and others, be and the same is hereby accepted in accordance with the dedication endorsed on said map, and also that the said map be filed with the Borough Clerk."

The freeholders claim that this declaration, signed by the complainant and endorsed upon the map, was a tender of a dedication which was accepted by the said resolution and thereby and thereafter became and was valid and effective to constitute a highway seventy feet in width.

To these two defences the complainant replies as follows: To the defence that the land was within the lines of the old road, the complainant says that it was impossible for the engineer who surveyed the line for the defendants to be sure of a proper location thereof for the reason that the return of the surveyors of the highway in 1796 mentioned no monuments and that therefore the line is indeterminate. The engineer responds to this by saying that he found certain monument stones from which he started his survey, but it appears by the testimony that at least one of these monument stones was a stone about seven inches in diameter with a rude cross cut upon the top of it which lay near the surface of the ground and was liable to be pushed about and moved when the ground was soft by the collision of the wheels of heavy wagons with it.

And as a further reply to the first defence the complainant says that he lived upon the premises for upwards of thirty years; that he remembers the location of the ancient fence lines; that in the early times the fence line included within the limits of the Brunson farm all the land in question and all the trees thereon, and that the roadway was wholly south of this fence

line; that it was thirty-three feet from fence to fence, and that the line of the highway which was used by travelers was midway between the two fences. This the complainant says was a practical location of the side lines of the highway and that having existed so long in the particular location, no court ought now lightly to disturb the situation.

In this statement of practical location the complainant is supported by several people who have long recollections of the situation of the roadway and the fences at this particular point.

As to the defence of dedication the complainant admits that he signed the declaration which appears upon the map, but says that he signed it and delivered it upon the condition that the work of improving the road to the width of seventy feet should be begun immediately, that is in 1903, and claims that inasmuch as the delivery was upon a condition which was not performed, there was no delivery in the law, and that the fact that the map was withdrawn from the clerk's office and the filing mark erased is evidence that it was understood that the conditions imposed by the complainant upon the delivery had not been complied with, and that therefore the dedication was null and void, and they rely upon the principle enunciated by Vice-Chancellor Pitney in the case of *O'Brien* v. *Paterson Brewing and Malting Co., 69 N. J. Eq. (3 Robb.) 117.*

It thus appears that the question involved is a question of title and that every proposition advanced by either complainant or defendant is in dispute.

Under these circumstances the question arises whether this court ought to permit the freeholders by force and arms to take possession of a strip of land of which the complainant is now in actual possession and to which he claims title, and the title to which is not clearly and manifestly in the board of freeholders.

To restrain such action would be to hold the *status quo* until the legal right could be settled. To withhold the injunction would be to permit the public corporation to appropriate lands to which it has not a clear title and to virtually put it in the possession thereof. If it should be permitted to thus enter into possession and construct its highway over the land such action

would destroy the complainant's freehold and work an irreparable injury.

Such action was restrained by Chancellor Kent in *Varick* v. *New York, 4 Johns. Ch. 53*. There the owner had been in possession for upwards of twenty-five years. The city of New York began an excavation upon land so in his possession, claiming that certain acts of the former proprietors in laying out streets amounted to a cession of them in law to the people and through them to the corporation, the proof of which, however, was not clear. The injunction was continued until the city should have established at law its rights to the ground in question. That case was followed in this state by Chancellor Runyon, in the case of *Manko* v. *Chambersburg, 25 N. J. Eq. (10 C. E. Gr.) 168.* There the city of Chambersburg attempted to remove a brick building which the complainant had erected on his lot on what he insisted was the true westerly line of the street. The municipal corporation, on the other hand, insisted that it encroached upon the street to the depth of five feet nine and a half inches. It appeared there that the complainant had been in possession for about fifty years and that for upwards of twenty-five years the road fence had been maintained on a line with the so-called obstruction. The injunction which had been granted on the filing of the bill was continued until the final hearing. The case comes within the rule laid down in *Hart* v. *Leonard, 42 N. J. Eq. (15 Stew.) 416; 1 High Inj. § 363.*

The result is that a preliminary injunction will issue in accordance with the prayer of the bill.