# WHEELING.

## TOWN OF WESTON *v*. RALSTON.

### Decided June 12, 1900.

1. CANCELLATION OF DEED—*Cloud on Title.*

   The supreme court of appeals having determined that a certain strip of land adjacent to a property owners lot, was part of a public highway, and subject to the public easement therein, and directed a mandatory injunction to place the public in possession of such easement to be awarded by the circuit court, and such court refusing to award the same, and such property owner, in total disregard and in contempt of such adjudication, proceeding to purchase other pretended titles to such strip of land, for the purpose of beclouding the public easement therein and further litigating the same, a court of equity will cancel such deeds in so far as they operate as a cloud upon the public easement and will perpetually enjoin the further litigation of the public's right, as an effort to maintain and continue in force a public nuisance in derogation of the sovereignty of the people of the state. (pp. 175, 176).

2. PUBLIC EASEMENT—*Dedication—Acceptance.*

   When a public easement has once been lawfully established

over land for a public highway, either by dedication to the use of the general public by individuals, and acceptance by the proper authorities, or by the exercise of the right of eminent domain, such easement is good against any and all titles. (p. 175).

Appeal from Circuit Court, Lewis County.

Bill by the Town of Weston against Er. Ralston. Decree for plaintiff. Defendant appeals.

*Affirmed.*

EDWARD A. BRANNON, for appellant.

W. W. BRANNON, for appellee.

McWHORTER, JUDGE:

The town of Weston by its mayor and common council undertook by means of its authority to remove from Water street, one of the public streets of said town, certain obstructions maintained thereon by Er. Ralston, who enjoined in the circuit court the action of said town authorities. Upon the hearing of which the circuit court perpetuated the injunction, when the defendant appealed to the Supreme Court, and upon the case there being heard the decree of the circuit court was reversed, the court finding that plaintiff was maintaining a public nuisance, subject to abatement either by the municipal authorities, under their statutory powers, or by an appeal to a court of equity, and said cause was "remanded to the circuit court, with direction that plaintiff's injunction be dissolved, and a mandatory injunction be awarded the defendant, at the plaintiff's costs, directing the plaintiff to abate the nuisance maintained by him thereon, and that the strip of ground in controversy be restored to Water Street, and made subject to he public easement therein." The case is reported in 46 W. Va., 544 (33 S. E. 326). The circuit court not only failed and refused to award the mandatory injunction directing the plaintiff to abate the nuisance maintained by him on said street, as required by said decree, but on the other hand when the municipal authorities undertook to abate the nuisance, the said circuit court entertained an action by said plaintiff of trespass on the case for damages against said town for removing the obstructions from said street, and also another action by him against said town of unlawful entry and detainer for the possession of said strip of ground upon which plaintiff had

maintained the said nuisance and which strip was by the decree of the Supreme Court ascertained to be a part of the said Water Street, said plaintiff having, after the decree of the Supreme Court aforesaid, obtained two deeds conveying said strip of ground, one from W. B. McGary, special commissioner in the case of Geo. C. Cole, trustee of James P. Cole and others, dated May 15, 1899, the other from James P. Cole, dated May 13, 1899, and under which plaintiff claimed that he had a right and title to said strip of land, and to the possession thereof notwithstanding said decision adverse to his rights as they existed when the case was heard, and also adverse to any and every title and claim of any and every person whomsoever. The town of Weston filed its bill in equity in the said circuit court, praying that said Ralston be perpetually enjoined from prosecuting said actions of trespass on the case and unlawful entry and detainer and compelled to dismiss the same, and that a decree be entered setting aside the deeds from W. B. McGary, special commissioner, and James P. Cole to said Er. Ralston and declaring said deeds null and void as against the rights of the town to the strip thereby conveyed as a part of its said Water Street, and for general relief. The defendant Ralston answered the said bills setting up title to said strip of ground, claiming that he was not holding under the Flesher title, so as to estop him from his present claim as alleged in the bill, but that since the decision of the Supreme Court he had acquired what he was advised was a perfect indefeasible title to said strip of land; averring that in July, 1889, the town of Weston instituted a suit in equity against James P. Cole, M. S. Holt, and others, one of the chief objects of which was to cancel and amend a deed dated April 10, 1889, from M. S. Holt to James P. Cole whereby said Holt conveyed to Cole a tract of land running as described so as to include the strip of ground, and indeed all of Water street from First street to Fourth street. Said bill sought to enjoin the building of a large livery stable by the said Cole on what the plaintiff, the town of Weston, contended was ground which had been dedicated to the use of the town for a street, claming that "all the land known and used as Water Street and embraced by said deeds was * * * * included in a grant from the Commonwealth of Virginia to ———— Flesher, and that said grant was made while an act passed by the General Assembly of the Commonwealth of Virginia was in full force and effect, which act

provides that all unappropriated lands on the bay of the Chesapeake, on the sea shore, or on the shores of any river or creek, and the bed of any river or creek in the Commonwealth, which remained ungranted by the former government, and which has been used as a common to all the good people thereof, shall be, and the same are hereby excepted out of this act, and no grant issuel by the register of the land office for the same either in consequence of any survey already made, or which may hereafter be made, shall be valid or effectual in law, to pass any estate or interest therein." And plaintiff averred that the greater portion of the land conveyed by the deeds in the shore of the West Fork river, that it remained ungranted by the former grant, and that shore was used as a common to all the good people of the Commonwealth, and that said shores were by the provisions of the said act excepted and excluded from the said grant to the said Flesher, and were passed thereby to him or any other person, and plaintiff therefore claimed that by virtue of the dedication by Flesher of the street on the bank and the exception and exclusion of the shore by said act, all the land lying between the lots which extended towards the river from their front on Main street one hundred and fifty feet, and the river constituted Water street and had been for more than forty years known, treated, held, used and occupied as Water street; that said James P. Cole had commenced to deposit material, such as stone and lumber, on Water street along between lot No. 12 (which ran from Main street back towards the river one hunderd and fifty feet) and the river, as represented by the plat of the town just above the bridge and near Second street and the Staunton and Parkersburg turnpike, and that he had commenced to dig and excavate for the foundation of a large building to be used as a livery stabe, &c. James P. Cole answered the bill, denying the most of the material allegations of the bill and that he had deposited material and excavated on Water street, and says, "Moreover, the defendant, in excavating as aforesaid, and depositing material left a space between the river and a point one hundred and fifty feet from Main street, of forty feet to allow the said town of Weston, should it see proper to do so, to open, construct and keep in repair a street as provided in the deed from Woffindin and McBride to O. H. P. Washburn and is still willing to allow such street to be maintained." And after denying that his livery stable, as he proposed to build and maintain it, would

be a nuisance, says "that it is not the habit of defendant to allow manure or other filth to accumulate about his stable, but as fast as it is accumulated it will be conveyed to the extreme end of said stable, one hundred and fifty feet from Second street and nearly two hundred feet from Main street on the river bank when it will be hauled away as fast as a wagon load accumulates. * * * This defendant alleges that the said stable will be so constructed as to keep his horses in the basement thereof; and by its close proximity to the river all surplus filth, if there be any, can easily be drained off. There is to be a rock wall on the upper side of said basement next to the proposed Water street and a water tight floor over the same," &c. Upon the hearing the injunction was dissolved, the bill dismissed, and the building was erected on the west line of Water street forty feet from the back line, of the lots fronting on Main street. A copy of Cole's said answer was filed with plaintiff's bill in case at bar. When the cause of *Ralston* v. *The Town of Weston* was reversed by this Court, the plaintiff, Ralston, procured a stay of execution of the decree on the 5th of May, 1899, for the period of ninety days for the alleged purpose of taking an appeal therefrom to the Supreme Court of the United States, but instead of executing the bond required and taking the proper steps to obtain his appeal, he immediately set to work to place himself in position, if possible, to avoid the effect and force of the decree against him and to re-open and relitigate the questions that had been settled by the decision of the court of appeals. On the 13th day of May, 1899, eight days after Ralston procured a stay of ninety days of said decree, he took from James P. Cole a deed with special warranty for the strip of ground which by the said decision was decreed to be a part of Water street, which Ralston had in actual possession himself for many years and which Cole never claimed, and of which he never had possession, and in the cause of the town of Weston against him ten years before he had admitted the existence of Water street forty feet wide, and that such part of it as he might have claimed as being covered by the deed from M. S. Holt to himself of April 10, 1889, belonged to, and was a part of the public street. And further, under a decree entered in the cause pending in the circuit court of Lewis County of Geo. C. Cole, trustee of James P. Cole and others, on the 11th day of May, 1889,

appointing W. B. McGary a special commissioner to make sale of
the several lots, tracts and parcels of land or any of them be-
longing to said James P. Cole in the town of Weston, said
Ralston purchased from said commissioner McGary the said
same strip of ground which sale was reported to said circuit
court by said commissioner on the said 13th day of May, 1899,
and confirmed by said court on the same day, and said W. B.
McGary was appointed a special commissioner to execute a deed
to said Ralston for said strip of ground, and by deed dated May
15, 1899, said special commissioner McGary conveyed the same
to said Ralston, both of which deeds were admitted to record
the day on which they were executed, thus manifesting a deter-
mination to relitigate the questions already so decided in the
courts of the State, instead of taking the same to the Supreme
Court of the United States, as he had proposed, and the circuit
court seems to have been willing to reopen the matters settled
by the first decision of the court of appeals, as upon the hearing
of the case the court dissolved the injunction, from which de-
cree dissolving the injunction the plaintiff, the town of Weston,
appealed to this Court, assigning as error the dissolving of the
injunction.

Counsel for the parties have filed very elaborate and well pre-
pared briefs, which would reflect credit upon any counsel as far
as the research and industry necessary to their preparations are
concerned.   They have thoroughly discussed the questions al-
ready settled, and forever settled whether right or wrong, in the
case of *Ralston* v. *The Town of Weston,* and the only question
to be determined in this case is, whether, after it has been finally
determined that the title under which Ralston sought to hold the
property as against the town's easement therein for the purposes
of a street, was insufficient as against the town, while it had
been for a half a century held by him and his vendors in actual
adverse possession as against all the world beside, he can by
procuring paper titles which never pretended to claim the par-
ticular strip of ground in controversy, and under which posses-
sion of said strip was never held for a single hour, sucessfully
contest the rights of the town?   The decision in the case of
*Ralston* v. *The Town of Weston* forever settled the question that
the town has an easement over the strip of land enclosed by
Ralston, and which was in said cause in controversy, which
under the rulings in said case is good against any and all titles

and is binding on the world. I deem it wholly unnecessary to enter into discussion of the many questions argued in the briefs. It seems to me that a statement of the case alone is sufficient, the matters at issue having been fully and finally disposed of in the said case of *Ralston* v. *The Town of Weston.* The circuit court should have perpetuated the injunction against said Ralston's further litigating the title of the town of Weston to the public easement over the strip of land in controversy, and from prosecuting his said actions of trespass on the case and unlawful entry and detainer set out in plaintiff's bill, and annulled and set aside the deeds mentioned from James P. Cole and from W. B. McGary, special commissioner, to Er. Ralston in so far as they becloud the title or effect the public easement over said strip of land. The decree of the circuit court is set aside, reversed and annulled, and this Court proceeding to render such decree as the circuit court should have rendered, it is adjudged, ordered and decreed that the injunction granted in this cause on the 12th day of June, 1899, by the Hon. G. W. Farr, judge of the Fourth judicial circuit of West Virginia, be and the same is hereby made perpetual, that the actions of trespass on the case and of unlawful entry and detainer brought by Er. Ralston against the town of Weston as set out in the bill, be dismissed, and that said deeds from James P. Cole to Er. Ralston, dated May 13, 1899, and from W. B. McGary, special commissioner, to Er. Ralston, dated May 15, 1899, conveying the strip of land in controversy be and they are hereby set aside and annulled in so far as they becloud the public easement over said strip of land, and said Er. Ralston is perpetually enjoined from further litigating the public right to said easement, as an effort to maintain and continue in force a public nuisance in derogation of the sovereignty of the people of the State.


BRANNON, JUDGE, (*Concurring*).

I fully concur in the forgoing opinion. We are asked to reconsider and overrule the decision of this Court in *Ralston* v. *Weston,* 46 W. Va. 544, (33 S. E. 326), 1 Mun. Corp. Cases 748, holding that the statute of limitations under adverse possession does not bar the right of a town or city to its streets. I have carefully examined this subject, and the opinion has constantly grown upon me that that decision is only the expression of sound

law, law that is held all over the United States, with the exception of four or five states.  At least thirty states have considered this question and announced the same law as that stated in *Ralston* v. *Weston*.  I consider the exposition of the law given in the opinion by JUDGE DENT as a correct, able and unanswerable one.  He bases it upon the sovereign right of the people to retain against private claim without title, the use of their streets and roads for public and necessary easement.  There can be no more vital principle than the preservation of the highways of the people for their use against those who, without color of title, would set up a private claim by mere possession ripening into title only from sheer negligence of the public officers of the city or town.  It is of the highest public interest to preserve such public right for the many over the claim of the few.  Against this public interest there is no statute of limitation.  Sovereignty is not barred by limitation, and ought not to be.  You must show a statute infallibly applying to it.  And in addition to this sovereign right, to which no statute applies, in terms, there is the consideration that the obstruction of a street or other highway is a public nuisance, which no length of time will ripen into a right, because that would be to make a public offense give good title against the public right.  Statutes of limitation operative upon the private right of individuals, are wise, to prevent private strife and litigation, and they largely proceed on the theory that the private individual, who has the better right, has been sleeping, and allowed his adversary by possession to take away his right; but that cannot be said of cities and towns, there being no private right, no private vigilance to watch and protect the public weal, and it cannot be said that the public right has been abandoned.  No one but the officers can act, and their negligence should not destroy the public right, and cannot justify the claim that a party has slept upon his rights, as in the case of a private individual.  The books all tell us that this is the very reason why time does not run against the king or commonwealth.  In this State the statute makes limitation run against the State; but that does not apply to the public interests in its highways; and moreover, a town is not the state, and that statute does not apply the bar of limitation to the public right held in trust by the town for the people.  I repeat that the occupation of a street or other highway by an individual is a public nuisance, and no time gives right to continue a public

nuisance. The Supreme Court of the United States, in *Fertilizing Company* v. *Hyde Park Company,* 97 U. S. (7 Otto 659), only expresses what all the books have long said and continue to say, in defence of the public interest, in speaking of a public nuisance, that: "In such cases prescription, whatever the length of time, has no application. Every day's continuance is a new offence." How then can a public nuisance ripen into vested title against public weal, the public right, against sovereignty itself?

A case decided April 23, 1900, by the supreme court of South Carolina, *Chafee* v. *City of Aiken,* (35 S. E. 800), is very apt in this particular case, and surely expresses the law almost universally accepted in America. It holds: "No rights against a municipality, in a street dedicated to it, can be acquired by adverse possession."

"Mere nonuser of a street by a municipality will not amount to such an abandonment as will destroy its right to open the same." It is suitable to this case in the fact that Ralston is a privy in estate with Flesher, who dedicated this street to the town, and Ralston holds by title derived from him. Flesher could not claim against his dedication by adverse possession, neither can one holding title under him, as does Ralston.

"No length of non-user bars a right granted by deed." Washburn on Easements, section 6, page 550. The very deed under which Ralston claims derivatively from Flesher dedicates this street to the town, and limits the rights of its grantee by it. This is conclusive as to the title held by Ralston under Flesher. See the number of states that hold that time will not give title to a public street by adverse possession cited in JUDGE DENT's opinion in *Ralston* v. *Weston.* Thus there are two reasons, distinct reasons, which I have just mentioned that deny that adverse possession will destroy the public right in a street or other highway. One is that the statute does not run against sovereignty; the other is that such possession is a public nuisance, a public offense, and no matter how long it continues, it does not mature into right. "Once a highway, always a highway," is found in all the books, those musty with age, and those that are new. Instead of this doctrine changing in favor of the individual against the public as time goes on, just the reverse is the case; for a critical examination will attest that states which once held that time would bar this public right, have

flatly overruled their own decisions, and now hold that time will not bar this public right. It is stated in the opinion in *City of Wheeling* v. *Campbell*, 12 W. Va. 36, that the courts of New York, Maryland, Virginia, South Carolina, Mississippi, Ohio, Illinois and Iowa hold that time will bar the public right in streets; but if they ever so held, their recent decisions have overruled former ones cited in *Wheeling* v. *Campbell, supra*, as shown by the following cases: *Driggs* v. *Philips*, 103 N. Y. 77; *Ulman* v. *Charles Street Ave. Co.*, 83 Md. 130; *Taylor* v. *Com.*, 29 Grat. 780; *Yates* v. *Warrenton*, 84 Va. 337; *Depriest* v. *Jonse*, (Va.) 21 S. E. 478; *Buntin* v. *Danville*, 83 Va. 200; *Crocker* v. *Collins*, 37 S. C. 327; *Chafee* v. *City of Aiken*, (S. Car.) (1900), 35 S. E. 800; *City of Vicksburg* v. *Marshall*, 59 Miss. 563; *Witherspoon* v. *City of Meridian*, 69 Miss. 288; *Heddleston* v. *Hendricks*, (1895) 52 Ohio St. 460; *Quincy* v. *Jones*, 76 Ill. 231; *Logan Co.* v *Lincoln*, 81 Ill. 156; *Chicago* v. *Middlebrooke*, 143 Ill. 265; *Sullivan* v. *Tichenor*, 179 Ill. 97; *Rae* v. *Miller*, 99 Iowa 650. Some of these states did hold otherwise, but have reversed their former holdings in the cases cited. The state of New Hampshire once held against the public right but has changed its former ruling. The court in *State* v. *Company*, 49 N. H. 256, overruled *Webber* v. *Chapman*, 42 N. H. 326, the judge who wrote the former opinion requesting the judge who prepared the later opinion to announce his change of opinion. *Heddleston* v. *Hendricks*, 52 Ohio St. 460, 465. It seems that Nebraska has changed its former ruling by the late case (1900) of *Krueger* v. *Jenkins*, 81 N. W. 844, holding that title to a part of a county road cannot be acquired by adverse possession. The above cases show that Virginia has changed, if she ever held contra, but though so cited, she never did so. This Court has received to some extent, criticism for its action in *Ralston* v. *Weston* in overruling *Wheeling* v. *Campbell;* but it would seem from cases just cited from other states that courts considered worthy of authority have chosen to assume the responsibility of overruling their former decisions, because in their opinion, on re-examination of the subject, they deemed it proper that unsound law, hurtful for all future time to the public weal, and law which did not spring from the legislature, but from erroneous ruling of the courts misapplying the statute of limitation, should no longer prevail to the destruction of public right. That erroneous ruling sprung from erroneous decisions,

and the same authority which announced it had equal authority to renounce it, it being a judicial decision, not a legislative act; and when convinced that such former decisions were unsound, those courts were justified in overruling them, as their further continuance would be highly detrimental to the public interests. So this Court thought when deciding the case of *Ralston* v. *Weston,* and it is clear that it only did the same thing upon this subject matter which has been done upon that same matter by courts of eminent authority. We still think that decision is right, and we do not see our way to retract it. If the former rule had continued, private individuals would have, year after year, invaded the highways of the people and held them forever from their use. The public would have to condemn and purchase, time after time, what justly belonged to it. JUDGE MC-WHORTER well says in *Lovings* v. *N. & W. R. R. Co.,* 47 W. Va. 582, (35 S. E. 962, 965) : "It is better to be right than to be consistent with the errors of a hundred years."

No legal principle is ever settled until it is settled right. The true rule is laid down in 23 Am. & Eng. Ency. L. 36 : "No prior decision is to be reversed without good and sufficient cause, yet the rule is not in any sense ironclad, and the future and permanent good to the public is to be considered rather than any particular case or interest. Even if the decision affects real estate interests and titles, there may be cases where it is plainly the duty of the court to interfere and overrule a bad decision. Precedent should not have an overwhelming or despotic influence in shaping legal decisions. No elementary or well-settled principle of law can be violated by any decision for any length of time. The benefit to the public in the future is of greater moment than any incorrect decision in the past. Where vital and important public and private rights are concerned, and the decisions regarding them are to have a direct and permanent influence in all future time, it becomes the duty as well as the right of the court to consider them carefully, and to allow no previous error to continue, if it can be corrected. The reason that the rule of *stare decisis* was promulgated was on the ground of public policy, and it would be an egregious mistake to allow more harm than good to accrue from it. Much not only of legislation, but of judicial decision is based upon the broad ground of public policy, and this latter must not be lost sight of."

The reason given in *Wheeling* v. *Campbell, supra,* is that a statute in this State applies limitation to the State. I have already shown that this statute does not apply to the sovereign rights of the people in their public highways; but anyway states where like statutes exist applying limitations to the state, yet hold, in their decision that time does not bar the public right to the streets and other highways, namely: Alabama, New York, Massachusetts, Mississippi, North Carolina, South Carolina.

There is another reason why the town's right is not barred. Ralston occupied only thirteen and one-half feet of the forty foot street, the balance being always open and used as a street. Now, in some of those states which still hold, and in some which once held, that the statute of limitations bars the public right where the whole street is adversely occupied, yet held that where the occupation extended over only a part of the street, the statute did not apply in bar of the public right. This distinction is quite reasonable. Why? Because when a man entirely closes up a street, there can be no more decided notice to the world of his adverse claim; but where he obstructs it only partially, his act is equivocal, and does not so signally notify the world of his claim, and no one notices it, as he would if the obstruction was total. He may not really intend finally to claim it. His act does not put the town or city authorities and the public on their guard. Generally in the case of streets like Water street in Weston, at one time very little used, no one thinks of opposing a partial obstruction, and takes no steps against it. In such case the states referred to have decided that the town or city may let its rights lie dormant until there is public need for the whole width of the street, and that when that time comes, the town or city may open the whole width. Such is the case in Water street in Weston. Such was the holding in *Krueger* v. *Jenkins,* (Neb., 1900) 81 N. W. 844; *Fox* v. *Hart,* 11 Ohio 414; *Lane* v. *Kennedy,* 13 Ohio St. 42; *McClelland* v. *Miller,* 28 Ohio St. 488; *Davies* v. *Huebner,* 45 Ia. 574.

There is still another reason why the right of Weston is not barred. The right of a town or the public in a street or highway is not owenrship of the body of the land, but only the right to use it for passage, an easement. The statute of limitations never applied to an easement. Jones on Easements, section 161, says: "The statutes of limitation do not directly apply to actions in which incorporeal hereditaments, such as easements, are in

rolved, but only to actions for the recovery of land." Newell on Ejectments 53 says: "Ejectment does not lie for an easement as an incorporeal hereditament. This rule is founded upon the principle that the action lies for something tangible, so that in case of recovery, the possesion of the property may be delieverd on a writ of possession."

Consistenly with this view we find that in the late great work, Am. & Eng. Ency. L (2. Ed.) Vol. 10, page 432, where the modes in which easements may be lost are given "limitations" is not mentioned. "Abandonment" is mentioned as a means by which the public may lose its highway. So, Washburn on Easements does not give limitations as a means of loss of a public easement, but does give "abandonment" as the cause of loss of such easement. You will find the books treat abandonment as a cause of such loss, but they do not apply the statute of limitations to easements. The books do treat non-user as working, under certain circumstances, the destruction of a public easement; but they say that such non-user must amount to an abandonment, and mere silence, mere inaction by municipal authorities, unattended with circumstances displaying and plainly manifesting an intentional abandonment, will not prejudice the right to the easement. Washburn on Easements, speaking of non-user in section 6, sub-section 1, uses this language: "Here, as in case of acts of abandonment, the non-user must be of such a character and duration as to show an intent to abandon the easement, or it must have induced another to expend money upon the supposition of such abandonment, which is known and acquiesced in by the one who might otherwise claim it, and where to enforce the right of easement would work injustice upon an innocent party." Now, just here, note that the town council passed resolutions in 1879 and several times since directing the opening of Water street to its full width, and Ralston was informed and notified of such resolutions and of the continued claim of the town. He did not flatly assert a claim when so notified, but practically admitted the town's right. Where is there anything to show an abandonment by the town of its clear right to this strip? Nothing. On the contrary, the evidence shows the opposite; it shows that the town did not intend to abandon its right, and so notified Ralston. It is well established that mere non-user will not destroy an easement where its owner sets up a continuous claim, or protests against a use of the *locus* by the

other party that is inconsistent with such claim to an easement. *Field* v. *Brown,* 24 Grat. '74. "Non-user of a highway by the public for many years is *prima facie* evidence of abandonment, but the abandonment must be voluntary and intentional." *Hartford* v. *N. Y. & N. E. R. Co.,* (Conn.), 37 Am. & Eng. Corp. Cas. 182; *Chafee* v. *City of Aiken,* (S. C., 1900), 35 S. E. 800. "Acts of the owner of the dominant estate relied upon to constitute an abandonment must be voluntary, and must be of such decisive and conclusive a character as to indicate and prove his intention to abandon the easement." 10 Am. & Eng. Ency. L. (2 Ed.) 435. Many cases are there cited. "But nothing short of an intention so to abandon the right would operate to that effect." Washburn on Easements, section 5, sub-sec. 1. Thus only abandonment, not the length of time fixed by the statute of limitations, can destroy a public easement. That statute has nothing to do with the subject; but abandonment has, as it is the only way, unless it is by release or merger of estate, by which the servient estate can be released from the easement. Ralston held the estate, the soil, the land that was burdened with this public easement. His grantor dedicated that easement, and so stated in the deed under which Ralston derivatively claims, and this land of Ralston could be relieved of this easement only by the intentional abandonment by the town. Instead of abandoning, the town still claimed. What act of the town evinces an intention to abandon? Mere silent non-user will not work an abandonment. *Board* v. *City,* 81 Ill. 156. A private individual owning an easement might much more readily lose his right by non-user and abandonment than a city or town. How can you show acts by a town amounting to an abandonment? It must be, in the language of the law above quoted, "acts of so decisive and conclusive a character as to prove his intention to abandon the easement." How can you prove such acts by a town? It would be a very difficult task. Mere inaction by its officers would not, should not, work such public detriment. If its acts are to be resorted to to establish abandonment, they could only be recorded acts of its council, and that attempt would be met by the inflexible rule that a town council cannot grant away the public right in a street without legislative authority. It would be an *ultra vires* and void act, not binding on the public. Therefore, I am unable to realize how you can fix a binding act of anbandonment upon a city or

town, though you may do so to an individual. Under the head of "abandonment" *Taylor* v. *Pearce,* 170 Ill. 145, is strong in favor of the town. "The opening of a highway its full length and its use by the public protects the public right to its full width, and repels any presumption of abandonment, which might arise from the fact that the fence of an adjoining owner has stood within the line of the highway for over twenty years." So in Maine, Missouri and Ohio. *Heald* v. *Moore,* 9 Atl. 734; *State* v. *Culver,* 65 Mo. 607, 27 Am. R. 295; *Kelly Co.* v. *Lawrence Co.,* 22 N. E. 639. See Elliott on Streets 658. Vacation by authority is requisite to discontinue; no mere implied abandonment will do. The statute says how a street may be vacated. That excludes implied abandonment. *Driggs* v. *Phillips,* 103 N. Y. 77. I, therefore, repeat that as the right of the town is an easement only, the statute of limitations does no apply. This is an important consideration in the matter; for in a state where limitation does run against the state, and it is claimed that a city or town is the same as the state, and that therefore the statute runs against a town or city, yet this cannot apply to an easement of the town or city, because the statute never ran against an easement. Hence the reason given in *Wheeling* v. *Campbell,* 12 W. Va. 36, for the position that the statute will bar a city or town of a right to a street, that is, that limitation runs against the state, and therefore also against a city or town was never good.

But whilst this Court might retract the principles settled in the case of *Ralston* v. *Weston,* namely, that limitation does not bar the right of a city or town to a street, if this Court were now convinced that such decision were error, yet it could not alter the actual decision of this case, for the reason that that decision is *res judicata* and forever settles, between Ralston and the town of Weston, that the strip of land in controversy is a part of Water street and still subject to the public easement.

But Ralston claims that after said decision in *Ralston* v. *Weston,* he obtained a new right to that identical strip by a conveyance from J. P. Cole. This cannot change the result, and why? First, Ralston's long enclosure had barred Cole's right, if he had any right, and vested Cole's title in Ralston by force of the statute of limitations; for the statute would bar the private right of Cole, but not the easement of the town, Cole being a private individual. Thus, when this Court decided that said strip

was not free from the easement of the town, but was still subject thereto, that Cole title was at that date vested in Ralston by reason of limitation, and the adjudication bound *all* titles, no matter how many distinct ones he then had, good or bad, and settled that all titles, however derived, vested in Ralston at that date were subject to this public easement. The conveyance from Cole passed nothing to Ralston, for such title as he had had already vested in Ralston.

Second. If Cole had any title to that strip, as he had not, it was subject to the public easement, and even if the statute could run against that easement, it would not run in favor of the Cole title, because it is not pretended that Cole ever had any possession of that strip, or set up any claim contrary thereto. Where did Cole have any possession to bar the town right, which nobody denies was once good? Ralston had an enclosure; but his right and Cole's right were distinct and not in privity, and Ralston's possession would not enure to the benefit of the Cole title. And the same rule of law, moreover, which, under principles above stated, would prevent Ralston from using the bar of the statute, would forbid Cole's so doing, and all other persons having any claim to that ground. That was an easement over that ground against *all* titles by whomsoever owned.

Third. In a suit between the town of Weston and Cole, in 1889, the town contested Cole's right to build a stable on the bank of the river on the west side of Water street, if counted at only forty feet, and on the opposite side of Water street from the strip now in controversy between Ralston and the town, the town claiming the whole space to the river. Cole by an answer claimed that the land between the west side of a forty foot street and the river had never been a part of the street, and also claimed some grant from the town; but his answer distinctly conceded the existence of a street of forty feet width, which included the thirteen and one-half feet enclosed by Ralston and now in controversy. If Cole ever had a shadow of claim to that thirteen and one-half feet along the east side of Water street, his answer renounced all right to it in favor of the town, and conceded that the public street included it, that is, that Water street began one hundred and fifty feet from Main street, and was of the width of forty feet, which would include the strip now in controversy. He

thus by solemn pleading in a court of record recognized the pre-existing street over that ground, and also made a fresh dedication of it for the public use, and moreover, for years thereafter, ever since 1889, suffered the public to use the street as such, and the town to work it, and thus made it a lawful street, if it never had been such before, by suffering such user, as section 31, chapter 43 of the Code says: "Every road, street or alley used and occupied as a public road, street or alley shall in all courts or places be taken and deemed to be a public road, street or alley." Upon the faith of that answer conceding this public right Cole had a decree allowing him to build a stable on the western side of Water street opposite the ground in controversy. He obtained that decree upon this renunciation of all claim to the ground covered by the street, adverse to the town, and that is an estoppel upon Cole. It is *res adjudicata* between Cole and Weston to show the existence of that street there, and this answer of Cole and the decree upon it, as acts of disclaimer, concessions and dedication of a street over this ground is *res judicata* in favor of the town against Cole, and as they bind Cole, so they bind Ralston as a privy in estate with him. Indeed, Ralston, under his conveyance from Cole, took subject to such renunciation and dedication; he got nothing from Cole adverse to the town, because as Cole's answer bound him as an act of renunciation and dedication, so Ralston took subject thereto. *Riddle* v. *Charlestown,* 43 W. Va. 796. The decree is *res judicata* on both Cole and Ralston, his privy in estate, Cole's answer is an estoppel by record and more solemn than a private writing, because made in a pleading and constituting a concession and waiver of a point that might have been in issue but for such waiver. Stephen on Plead. 204. "When a pleading is made under the oath of the party, it is especially competent evidence against him as a solemn admission of the truth of the facts stated." 8 Ency. Pl. & Prac. 21. "An admission made during the course of judicial proceedings, whether it be direct, or by inference from the position assumed, the relief sought, or the defense set up, will estop the one who makes it from subsequently asserting any claim inconsistent therewith." 4 Am. & Eng. Dec. in Eq. 304. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining it, he cannot thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the preju-

dice of the party who has acquiesced in the position formerly. taken by him." *Davis* v. *Walker,* 156 U. S. 680. An estoppel "may be availed of by privies in blood, estate or law, as well as by all the parties to the transaction, and is equally binding upon them." 4 Am. & Eng. Dec. in Eq. 356. "Where one succeeds to the same rights of property formerly enjoyed by another, there is often such privity that the rights of the owner in such property may be affected by the statements of the latter." Jones on Ev., ss. 240, 241. See *Railroad Co.* v. *Ohio,* 117 U. S. 129; *Delaware Co. Commissioners* v. *Safe Lock Co.,* 133 U. S. 473; *Pope* v. *Allis,* 115 U. S. 370; *Bigelow, Eslop.,* 526. "A party cannot recover on a statement of facts entirely at variance with and inconsistent with claims set up by him in a prior suit for the same cause." Note 3, 7 Am. & Eng. Ency. L. 3. Cole's answer was itself a solemn dedication as a street, alone enough to make it a street, and he could not retract the dedication. *Fairbury* v. *Holly,* 169 Ill. 1. It is claimed that the decision of this Court in *Ralston* v. *Weston* violates the constitution, Federal and State, in depriving Ralston of property without due process of law. I regard this question as not relevant to this case. To me it is inconceivable how a party, who has himself brought a suit in a state court and that court has, in the due and regular course of judicial proceedings, heard both parties and rendered judgment, can say that the court violated the Federal Constitution by taking property without due process of law. If so then such is the case in every suit where the state court affects the right of property. A regular hearing in a regular suit is the clearest instance of the exercise of due process of law. When a party has been fully heard in the regular course of judicial proceedings an erroneous decision of a state court does not deprive the unsuccessful party of his property without due process of law. *Marchant* v. *Penn. R. R. Co.,* 153 U. S. 380; *Laidley* v. *Land Company,* 159 U. S. 103. If the court erred in failing to observe the Federal Constitution, (though the question was not raised,) the only redress is in the Federal Supreme Court by appeal, because it would then be simply error of law, not a void decree, and this Court could not for error in a past and closed term nullify its former final decree. Both of said Ralston's titles, his original one and the Cole claim, being vested in him at the date of said decree, are foreclosed by it, and that decree is *res judicata* upon them both,

and beyond the power of recall by this Court. In this present-case the facts do not sustain or present a Federal question even colorable. This Cole title was unquestionably changed with the street right, and under it there is not shown one hour's possession of the strip in controversy adverse to such street right; never any possession; on the contrary, Cole conceded it in his answer and by subsequent user. If he had not conceded it, he never had possession to take it away. How could he, then, have any property except in the mere soil? How have any vested property to be devested without due process by the exercise of the street right? Ralston's possession under his other claim could not be tacked to it. *Jarret* v. *Stevens,* 36. W. Va. 445. So, Ralston by the pretense Cole title acquired no vested property to be taken by the street casement—no property hostile to it. This claim of deprivation of property without due process is only colorable, and raises no "federal question" under decisions. *Wilson* v. *North Carolina,* 169 N. S. 586.

I can see no shadow to claim any basis under this head, except the theory that the decision in *Wheeling* v. *Campbell* that limitation bars a right to a public street, makes a law, and that under it title had already vested in Ralston before this Court overruled that decision, and that the overruling decision devested a vested right of property in Ralston. This cannot be, unless we can say that Ralston had a vested right of property under the facts and the law. This he had not. Even if we could regard the first decision, *Wheeling* v. *Campbell,* as making a "law," still Ralston would have no vested property under it, in the view of a Federal Court, or of a state court, for the simple reason that Ralston's possession was never adverse to the town's easement, as held, upon the facts, by this Court in the case of *Ralston* v. *Weston,* and thus Ralston did not acquire vested property by adverse possession. But suppose Ralston's possession had been adverse in character, would it give him title? Not unless we can say that the first decision of this Court holding that limitation applies to bar a town or city of its easement in a street, was "a law," just like a statute, and that title vested under it. There must be law to vest a title to property. A decision of a court is not a "law," so that by its force alone property may vest. Property will vest under the law, but not under a mere decision, an erroneous decision, except in the particular case, and that is not because such decision is a law,

but because it is *res judicata* upon the subject matter. A court cannot originate, cannot *make* law; it only expounds and applies pre-existing law. In *Wayman* v. *Southard*, 10 Wheat. 46, Chief Justice Marshall in a few words laid down the cardinal rule in saying, "The difference between the departments (of government) undoubtedly is that the legislature makes, the executive executes, and the judiciary construes, the laws." The Virginia court of appeals, in *Griffin* v. *Cunningham*, 20 Grat. 51 said: "The law is *applied* by the one and is *made* by the other. Cooley's Cons. Lim. 92. 'To declare what the law is or has been is judicial power; to declare what the law shall be is legislative.'" In *Swift* v. *Tyson*, 16 Pet. 18, the court, by Justice Story, defined the meaning of a law as follows: "In the ordinary use of language it will hardly be contended that the decisions of courts constitute laws, they are, at most, only evidence of what the laws are, and not of themselves laws. They are often re-examined, reversed and qualified by the courts themselves whenever they are found to be either defective, ill founded or otherwise incorrect." This declaration of the court has been reaffirmed in words. *Railroad Co.* v. *National Bank*, 102 U. S. 29, 54; *New Orleans Waterworks Co.* v. *Louisiana Sugar Ref. Co.*, 125 U. S. 607. The Federal Constitution contains a clause that no state shall make any "law" impairing the obligation of a contract. Again and again the U. S. Supreme Court has decided that under that provision a decision of a court is not a "law," and that only an act of the legislature is a law. Cases just cited, and *Laidley* v. *Land Co.*, 159 U. S. 103-112 and *Brown* v. *Smart*, 145 U. S. 454. Now, what is the difference between the two cases? It requires a "law" for property to vest. There cannot be a deprivation of property without due process of law, unless the party has vested property, and he cannot have that unless he has a law to vest it in him. Law is of the same nature in both cases. Therefore, I repeat, that the first decision of this Court, in *Wheeling* v. *Campbell*, is not a "law," under which property could vest, as if it were a legislative act. Moreover, that decision has been adjudged erroneous and it and *Teass* v. *St. Albans*, 38 W. Va. 1; *Forsyth* v. *Wheeling*, 19 W. Va. 318, overruled. The last two cases simply followed the first without reconsideration. What is the effect of such overruling? Mr. Justice Miller undoubtedly stated the true law in *Gelpeck* v. *Dubuque*, 1 Wall. 205, speak-

ing of the effect of overruling former decisions, when he said:
"I understand the doctrine to be, in such cases, not that the
law is changed, but that it was always the same as expounded
by the later decision, and that the former decision was not, and
never was, the law, and is overruled for that very reason." 1
Blackstone Com. 70 says: "But even in such cases the subse-
quent judges do not pretend to make a new law, but to vindicate
the old one from misrepresentation. For if it be found that the
former decision is manifestly absurd or unjust, it is declared, not
that such a sentence was bad law; but that it was not law. See
*Wood* v. *Brady,* 150 U. S. 18. The cases of *Allen* v. *Allen,* 16
L. R. A. 646, and *Ray* v. *Western Pa. Gas Co .,* 138 Pa. St.
576, 12 L. R. A. 290, both say that when a former decision
is overruled, the law is not altered, changed or amended, but
that the erroneous decision never was law, and that the principles
of the later decision were the true and sound law at the very time
when the first erroneous decision was rendered. So *Rockhill*
v. *Nolson,* 24 Ind. 424; *Frink* v. *Darst,* 14 Ill. 304; *Paul* v.
*Davis,* 100 Ind. 422. Decision not a law, only evidence of what
the law is. I assert that the true principle is, is that when a
former decision is overruled the law is and always was as it is
stated in the later decision. It is different where there is a
valid statute, which is afterwards repealed. While that statute
was in force, title could vest under it; but not so with an erron-
eous decision when overruled. It never vests under a decision,
but under law. There are decisions, such as *Gelpeck* v. *Dubuque,*
1 Wall. 205, and *Douglass* v. *County,* 101 U. S. 687, exceptional
in character, holding that where contracts are made under judicial
decisions, and on the faith of them, before they are overruled,
their subsequent overruling, will not affect such antecedent con-
tracts. This doctrine applies to commercial contracts. An ex-
amination of the U. S. Supreme Court cases will show that such
cases are properly limited to commercial contracts, because
they are commercial contracts. See Justice Brown's opinion in
*Travis* v. *Wade,* 174 U. S. 508, 19 Sup. Ct. R. 715. Justice
Miller said, in *Gelpeck* v. *Dubuque,* that the whole membership
of the U. S. Supreme Court limited this exception to commer-
cial contracts, and they conceded that if the case were one in-
volving title to real estate, the matter would be tested by the
later decision, and that it would furnish the true test of what

the law always was. Now, remember, as a material point in this case, that Ralston's title set up under adverse possession, was not a title acquired by any sort of contract, but by a continued violation of the law in obstructing a public highway, and thus maintaining a public nuisance, a public offense. Is it possible that the former erroneous decision can be appealed to, as a "law" under which a title to land could vest by the commission of a public wrong—that a party could be thus aided by an erroneous decision to take advantage of his own wrong? There is a difference between this case and a title acquired by contract. In the *Gelpeck Case* there was a strong equity of an innocent purchaser of negotiable bonds good under the first decision to call upon that decision to shield him from the effect of the later overruling decision, a strong equity and call for justice; but can one who has taken up a street, without color of title, and thus committed an indictable offense, present any such claim for protection. He ought not, and cannot be allowed to do so.

To enable a party to say that he has been deprived of property without due process of law, he must be able to show a "law" under which the property could vest; he must show a right of property under the law, recognized by the law. *New Orleans* v. *Water Co.,* 142 U. S. 179; *Essex &c.* v. *Shinkle,* 140 U. S. 334. Ralston's only show of title against the easement, for he owned the soil, was by adverse possession, and he could not get title by it, because there could be no adverse possession against a public easement in a street. Possession ever so long contrary to law, a nuisance, cannot give title. Clearly this shuts out all claim of Ralston existing at the date of the decree in *Ralston* v. *Weston.* How as to Ralston's claim derived from Cole? I repeat that that colorable claim is barred by the former decree as *res judicata.* But for argument's sake, say that it was a title acquired *after* the former decree. There is no color for claiming title by possession under it against the town's easement, because Cole never had any possession of this strip. All admit that the street was once valid to cover this strip with the public easement, and Cole never acquired any title by possession against that easement, as he never had possession at any time, and Ralston could not get from him a right which Cole himself did not possess; so there is no pretense for Ralston to say that he is deprived of property under this Cole claim without due process of law, since he had no vested property to be deprived of without

due process of law. "There can be no vested right to do wrong." *Baugher* v. *Nelson,* 9 Gill. 300, 52 Am. D. 694. After writing to this point I come across the case of *Alferitz* v. *Borgwardt,* 126 Cal. 201. The supreme court of California had held that under a certain kind of mortgage title vested; but later held that it did not, and in the case cited the court said: "But appellant contends that it (the first decision) states the law upon the subject; and that law was not changed until the decision of *Shoobert* v. *DeMolta,* 112 Cal. 215, 53 Am. St. R. 53, in 1896, and in the meantime this mortgage was made. It is said that to apply the rule declared in the last case, rather than that laid down in the first, would be to impair the obligation of contracts. (*Douglass* v. *County of Pike,* 101 U. S. 687 and many other cases cited). In the case named it is said: "After a statute has been settled by judicial construction, the construction becomes, so far as *contract* rights under it are concerned, as much part of the statute as the text itself, and a change of the decision is to all intents and purposes the same in effect as on *contracts* as the amendment to the law by means of a legislative enactment." No rights are acquired here under a statute in the meaning of that line of authorities, which seem to refer to laws authorizing the government or some sub-division or department thereof, to contract certain obligations. Beyond this the cases cited do not go. I hardly think the rule would be applied to decisions of state courts in regard to general rules of law, although they may affect contract rights. At best, they but lay down a rule for the Federal Courts as to how far they will be governed by decisions of state courts in the construction of state statutes. Laws are not made by judicial decisions. The court simply determines the rights of the parties in that particular controversy. Courts have never thought themselves bound by it as they are by a valid statute. No doubt an appellate court assumes a very grave responsibility when it reverses a former decision which has become a rule of property or the law of contracts, and, whenever this is done, it must be understood that the court has not only considered the objections to the former decision, but the evils which may follow from its reversal. The matter is ably discussed in *Hart* v. *Burnett,* 15 Cal. 530, and the views there expressed have been frequently affirmed. The *mere* fact that an error has been made in a decision of the supreme court is no reason for perpetuating it,

but, in a given case, to correct it may be productive of more evil than to permit it to stand. And, as stated in the above case, justice is not always on the side of him who claims under the erroneous decision. Why should one who has honestly acquired property according to the law of the land lose it because a judge, relying upon imperfect presentation, has erred? Or why should the policy of the government, adopted upon great deliberation, be so defeated? And especially so where a decision was never deemed to have the force of absolute law. If the Supreme Court of the United States shall finally go with the appellants in holding that the courts are prohibited from reversing an erroneous construction of a state statute because such decision is a law which impairs the obligation of contracts, then the courts can never change the erroneous construction, for a court can only pass upon existing rights, and must always look to the past for its law, and, so far as it declares the law, it declares what it was and is, but cannot enact what it shall be. I do not think that august tribunal will adopt this view, which, if adopted, can result only in the perpetuation of error."

In *Hart* v. *Burnett,* 15 Cal. beginning at page 597, is an able discussion of *stare decisis,* and it is shown that where a renunciation of erroneous decisions, though several in number, and though they concern title to real estate, will promote public interest, they often have been, ought to be, renounced.

Equity Jurisdiction. This is clear in this case. The right of the town to the street being valid, settled by adjudication, as shown by JUDGE McWhorter and above, shall it be called upon to re-litigate its right in two suits brought against it in denial of that right? If its title to that street is good, those actions are groundless. If judgments were recovered in them, could this Court sustain them? Clearly not. To do so, would nullify its own decision. This Court held the right of the town good, and made a mandatory injunction to enable the town, authorizing the town, to do the very thing for doing which it is now sued. The town only executed its decree. Had this Court not adjudged the matter, equity might take jurisdiction on the mere ground of avoiding multiplicity of suits; but the town has established its right by adjudication. Is Ralston to be allowed to recover from the town damages for doing an act held by this Court to be a lawful act? Is he to be allowed by his action of unlawful

entry to recover possesison and stop up this street and thus perpetuate a public nuisance? Courts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance, and this alone would give jurisdiction, even if it had not been decided that this was a public nuisance, and more clearly so as it has been decided to be a nuisance on a street owned by the town. *Hartley* v. *Henretta,* 35 W. Va. 222. "Courts of equity *interfere* to restrain and prevent public nuisances threatened or in progress, as well as to abate those already existing." 14 Ency. & Prac. 118. "In regard to public nuisances, the jurisdiction of courts of equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth. * * * * An indictment lies to abate the nuisance and punish the offender; but an information also lies in equity to redress the grievance by way of injunction." Story, Equity, section 921; *Kansas* v. *Ziebold,* 123 U. S. 623; *Béveridge* v. *Lacy,* 3 Rand. 63; *Bridge Co.* v. *Summers,* 13 W. Va. 484; Opinion in *Hartley* v. *Henretta,* 35 W. Va. p. 238. "Where a municipality has control of streets it may in its corporate name institute judicial proceedings to prevent or remove obstructions thereon." *Yates* v. *Warrenton,* 84 Va. 337; *Dillon Mun. Corp.* section 659; 3 Pom. Eq. sections 1349, 1350; 1 High, Injunc., sections 768, 769; Wood, Nuis., section 729.

Another plain ground of equity jurisdiction is to quiet title by removing the cloud over the town's right caused by the conveyances from Cole and McGary, commissioner, and give peace against litigation, especially as its right has been adjudicated. The town was in possession and for this reason, and because it had a mere easement, could not bring ejectment, and had no remedy to give adequate relief but in equity. *Smith* v. *O'Keefe,* 43 W. Va. 172; *Davis* v. *Settle,* 43 W. Va. 17, 37; *Christian* v. *Vance,* 41 *Id.* 754; *Clayton* v. *Barr,* 34 *Id.* 290. In the *Davis Case,* JUDGE DENT held that equity would plainly interfere to prevent an act to defeat an adjudication of this Court. Even if Ralston's procurement of these deeds be ever so free from an intentional obstruction of the former decision, yet if they are in fact such an obstruction unwarranted in law, equity will step in to cancel and give peace. "The jurisdiction is now maintained to the fullest extent, and these decisions are founded on the true principle of equity jurisprudence, which is not merely remedial, but also preventive of injustice. If an instru-

ment ought not to be used or enforced, it is against conscience for the party holding it to retain it for some sinister purpose." 2 Story Eq. Jur. s. 700.

In no view should Ralston be upheld in using these deeds to defeat the public right, to becloud the public right, fixed and settled by actual adjudication. Equity should say, "Peace, be still."

"Jurisdiction in equity will be exercised to enjoin nuisance and avoid vexatious litigation and a multiplicity of suits." 4 Ency. Plead. & Prac. 1126.

Ralston's action cannot be successfully predicated on any idea of forcible entry, because an officer making an entry under process is not guilty of forcible entry. *Ogg* v. *Murdoch,* 25 W. Va. 139. The order of the council to make such entry to remove such nuisance was warranted by chapter 47, Code, by the actual adjudication of this Court, and was due process, even without such statute, and adjudication, it being a nuisance. The council order as the unit or process. *Driggs* v. *Phillips,* 103 N. Y. 77. Any one may remove an obstruction on a highway. 2 Tucker 4, note; *Dimmett* v. *Eskridge,* 6 Muf. 308. A town surely has a plainer right inherent in it. It is commanded to do so, and may do so in a summary way, and destroy the thing creating the nuisance. *Yates* v. *Warranton,* 84 Va. 337; *Yeager* v. *Carpenter,* 8 Leigh 454; *Young* v. *Gooch,* 2 Leigh 646; *Baker* v. *Boston,* 22 Am. Dec. 421; *Hart* v. *Albany,* 24 Am. Dec. 165; 2 Beach, Pub. Corp. 1022.

As equity has jurisdiction on several grounds, it is useless to cite law to show that no common law jury right is invaded.

*Affirmed.*